BOWEN, Presiding Judge.
W.L.L., Jr., the appellant, was adjudicated a youthful offender based upon his illegal possession of crack cocaine. He was sentenced to two years’ probation and was ordered to pay a $150 fine, $150 to the Alabama Crime Victims’ Compensation Fund, and court costs. He raises two issues on this direct appeal from that adjudication.
I.
The appellant contends that the evidence is insufficient to prove he had constructive possession of the cocaine. We affirm the judg- *1336 merit of the trial court on this issue for two separate and alternative reasons.
Initially, we affirm the judgment of the trial court because this issue was not preserved for review. Although this issue was never presented to the trial court, the appellant argues that because he was granted youthful offender status and tried in a bench trial in the circuit court, his failure to raise the sufficiency issue does not bar appellate review. The appellant cites Ex parte Vaughn, 495 So.2d 83 (Ala.1986), as authority for this contention. Vaughn stated that where the trial judge is the trier of the facts, “Rule 52(b) [, A.R.CÍV.P.,[1] ] provides an exemption from the requirement of invoking a ruling by the trial court on the issue of evidentiary insufficiency when written findings of fact are made.” Vaughn 495 So.2d at 87 (emphasis added). The Vaughn court reasoned that “[t]he trial court’s ruling on the sufficiency of the evidence is implicit” in the court’s judgment because “by making written findings of fact, the trial judge has had the additional opportunity to reconsider the evidence and discover and correct any error in judgment which he or she may have made upon initial review.” Vaughn, 495 So.2d at 87. “[W]hen written findings of fact are made, they serve the same useful purpose as does an objection to the trial court’s findings.” Vaughn 495 So.2d at 87.
Vaughn is not applicable in the present case because the trial court did not make any written findings of fact. The appellant relies on the trial court’s oral conclusions (R. 103-06) as findings of fact. This will not suffice as a substitute for an objection because it does not reflect the trial court’s “additional opportunity to reconsider the evidence and correct any error in judgment ... made upon initial review.” Vaughn, 495 So.2d at 87.
Moreover, in Vaughn the appellant was tried in the juvenile court[2] and was adjudicated a delinquent child, as that term is defined in Ala.Code 1975, § 12-15-1(9). In the present ease the appellant was transferred from the juvenile court to circuit court where he was to be tried as an adult on a criminal charge. See Ala.Code 1975, § 12-15-34.
The granting of youthful offender status is largely discretionary with the trial judge. Although the rules of evidence are relaxed in a youthful offender proceeding, the Rules of Criminal Procedure apply in such a proceeding. Therefore, the appellant’s failure to object to the sufficiency of the evidence at trial bars the issue from appellate review.
Our second reason for affirming the judgment of the trial court is because out-review shows that sufficient evidence was presented to adjudicate the appellant guilty of constructive possession of crack cocaine.
“‘The apparent purpose of a constructive possession doctrine is expansion of the scope of possession statutes to encompass those cases where actual possession at the time of the arrest cannot be shown, but “where the inference that there has been possession at one time is exceedingly strong.” ’ Whitebread and Stevens, Constructive Possession in Narcotics Cases: To Have and Have Not, 58 Ya.L.Rev. 751, 755 (1972), (quoting First Report of the National Commission on Marijuana and Drug Abuse, Appendix 139).”
Hamilton v. State, 496 So.2d 100, 103-04 (Ala.Cr.App.1986).
“ ‘The offense of possession of illegal drugs is susceptible of joint commission. Green v. State, 30 Ala.App. 94, 2 So.2d 324 [, cert. denied, 241 Ala. 288, 2 So.2d 326 (1941) ]; Gunnells v. State, 21 Ala.App. 648, 111 So. 320 [(1927)]. Further the guilt of the accused does not necessarily depend upon proof of his ownership of the drugs. Womack v. State, 34 Ala.App. 487, 41 So.2d 429 [ (1949) ]; Thompson v. State, 32 Ala.App. 402, 27 So.2d 55 [, cert. denied, 248 Ala. 270, 27 So.2d 59 (1946) ]. However, there must be evidence from which the *1337 jury might conclude beyond a reasonable doubt that defendant knew of the presence of the drugs. Such guilty knowledge may be established by circumstantial evidence. Womack v. State, supra; Thompson v. State, supra.’ ”
Pryor v. State, 48 Ala.App. 465, 468, 265 So.2d 907, 909-10 (Cr.App.1972).
Here, the State presented evidence from which the trier of fact could reasonably conclude that the appellant had the cocaine in his possession and that he attempted to hide it from the police. Sergeant Willie Earl Prewitt of the Northport Police Department testified that while on patrol within the a particular “area of housing authority” he passed a parked vehicle, which was emitting very loud music. Prewitt stated that because the rental leases in this public housing area prohibit the playing of loud music and because of numerous complaints concerning loud music in the area, he decided to ask the occupants of the car to turn down the volume of the music. Although the car drove off before Prewitt could return to its location, Prewitt never lost sight of the ear, and he followed it for about one and one-half miles. The license plate number on the car reflected that it was registered to Lacedric Jones, who was a “known dope dealer for the Tuscaloosa area,” and for whom there existed outstanding writs of arrest. R. 19, 31.
Prewitt testified that he turned on his blue fight as the car he was following approached the Sonic Restaurant. The car pulled into an ordering stall at the Sonic. The driver of the car, Jerome Prince, was in Prewitt’s sight the entire time. Prewitt testified that Prince did not throw anything underneath the car at any time during the stop. R. 75, 80. However, Prewitt testified that he observed the passenger, the appellant, open the passenger door and “ben[d] over like he appeared to put something under [the car].” R. 9. Prewitt said that he could not see the appellant’s hands and could not say whether the appellant actually put anything out of the car. R. 12, 23. Prewitt stated that he ordered the appellant to shut the door, then went to the driver’s side of the car and asked Prince to step out of the car and to produce his license.
As Prince exited the car, Prewitt shined his flashlight inside the car and saw what appeared to be a “crack rock” on the driver’s side floorboard. R. 9, 24. Prewitt could not explain why his written report stated that the cocaine was under the floormat when he testified that he was sure that it was on top of the floormat by the gas pedal. Other police units arrived at the scene and searched the ear. Prewitt stated that Officer Joel Willingham found what appeared to be a crack cocaine rock under the passenger side of the car. R. 27. At that point the search stopped until the Narcotics Division arrived.
Officer Joel Willingham, a patrol officer with the Northport Police Department, testified that he found a matchbox containing eight rocks of crack cocaine underneath the car on the passenger side, within arm’s reach where the appellant was sitting in the ear. R. 36, 38.
The appellant denied any knowledge of the presence of any cocaine either inside or outside the car. R. 90. Several days after this incident the appellant told the police that he had learned that the cocaine belonged to Prince and that Prince had dropped the matchbox containing the cocaine outside the car and had kicked it under the car to the passenger side.
The State presented sufficient evidence to prove constructive possession.
“[A] defendant’s mere presence in an automobile in which an illegal substance is found will not support his conviction for possession of that substance unless the state introduces other evidence in support of the defendant’s possession. Story v. State, 435 So.2d 1360 (Ala.Cr.App.1982), rev’d on other ground[s], 435 So.2d 1365 (Ala.1983). The kinds of other evidence or circumstances that could provide the additional support necessary to show possession are unlimited and will vary with each case. Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978).”
Perry v. State, 534 So.2d 1126, 1128 (Ala.Cr.App.1988). “The defendant’s knowledge of the presence of the substance may be shown by circumstantial evidence.” Perry, 534 So.2d at 1128. “Knowledge is usually estab *1338 lished by circumstantial evidence.” Rowell v. State, [Ms. CR-90-1669, September 30, 1993] — So.2d —, — (Ala.Cr.App.1993). “ ‘[G]uilty knowledge may be established by the surrounding facts and circumstances.’” Coslett v. State, 641 So.2d 302, 306 (Ala.Cr.App.1993).
In this case, abundant circumstances existed from which the appellant’s knowledge of the presence and control of the cocaine could be inferred. “Proximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances.” German v. State, 429 So.2d 1138, 1142 (Ala.Cr.App.1982).
Officer Prewitt testified that Prince remained in his sight at all times and that Prince did not throw anything under the car, but he observed the appellant move in a manner that suggested to him that the appellant was putting something underneath the car, even though he could not see the appellant’s hands. As this Court has recognized, “ ‘[M]ost drug users separate themselves from their contraband as soon as a police officer approaches their person, residence or automobile.’ ” Hamilton v. State, 496 So.2d 100, 104 (Ala.Cr.App.1986) (quoting Claudill, Probability Theory and Constructive Possession of Narcotics: On Finding That Winning Combination, 21 Jurimetrics J. 235, 240 (1977)). Officer Willingham testified that he found the matchbox containing the crack cocaine within the appellant’s reach underneath the car. This testimony constitutes sufficient circumstantial evidence to allow the trier of fact to find beyond a reasonable doubt that the appellant had knowledge of the presence of the cocaine.
‘“When the presence of the accused at the scene is established and evidence of his knowledge of the presence of the prohibited substance is shown, along with any other incriminating evidence, the issue of the defendant’s guilt should be submitted to the jury.’ Radke v. State, 292 Ala. 290, 292, 293 So.2d 314, 316 (1974). This Court will not set aside a conviction on the grounds- of insufficiency of the evidence unless ‘ “allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust.” ’ Walters v. State, 585 So.2d 206, 210 (Ala.Cr.App.1991) (quoting Johnson v. State, 378 So.2d 1164, 1169 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979).”
Coslett v. State, 641 So.2d 302, 306 (Ala.Cr.App.1993).
II.
The appellant contends that the chain of custody for the cocaine found in the matchbox underneath the car was not proven and that, consequently, the cocaine was improperly admitted into evidence. The appellant argues that the four police officers who handled the cocaine gave different versions of their role as a “link” in the chain of custody. The appellant contends that this constituted too many unconnected links and, in net effect, completely broke the chain.
Our review of the record reveals the following in connection with the chain of custody of the cocaine found underneath the automobile.
Northport Police Officer Willie Earl Prew-itt testified that Officer Willingham “found the matchbox under the vehicle.” R. 27. Officer Joel Willingham testified that he found a matchbox “underneath the car on the right passenger side.” R. 36. He stated that he opened the matchbox and observed “[w]hat appeared to be — I believe it was eight cocaine rocks.” R. 38. He delivered the matchbox to an officer assigned to the West Alabama Narcotics Squad, either William Hurter or Alvin Douglas Blocker. R. 38-39, 44. Although Willingham’s report stated that Prewitt spotted the matchbox underneath the ear, a fact Prewitt had earlier denied, it was undisputed that Willingham was the officer who actually seized the matchbox.
Alvin Douglas Blocker, a Tuscaloosa County Deputy Sheriff, assigned to the West Alabama Narcotics Squad, testified that he received the matchbox in a sealed envelope from Sergeant Hurter. R. 47. He said that *1339 he delivered the envelope to Lt. Ken Miksis, another officer with the West Alabama Narcotics Squad. R. 48.
Sergeant William Hurter, a Tuscaloosa Police Officer, assigned to the West Alabama Narcotics Squad, testified that he was “thinking it was Prewitt that turned it [the matchbox] over to me,” but indicated that he could have received it from Officer Willingham. R. 59, 60-62. He testified that he placed the matchbox in an envelope, then sealed the envelope and placed it inside the evidence safe in his office where it was later picked up by Lt. Miksis. R. 62. There was a chain of custody written on the envelope. R. 65. When asked what this “listing ... show[ed] as the chain of custody,” Hurter replied:
“A. That the officer making the seizure that I got it from was Sergeant Prewitt from Northport on November 29th of ’91. And then it went from me to Lt. Miksis and—
“THE WITNESS: Judge, let me clarify that, when we say Lt. Miksis, that means it’s going into the safe because at that time he took all the evidence to the lab. And then it goes from Lt. Miksis to the lab and from the lab back to Lt. Miksis, who then would have placed it into evidence at the station.” R. 65-66.
Hurter acknowledged that the written chain of custody did not show that Blocker, the case agent, ever had custody of the envelope. R. 67.
Lt. Ken Miksis, a Tuscaloosa Police Officer assigned to the West Alabama Narcotics Squad, testified that he removed the envelope containing the matchbox from the safe in the narcotics office, that he took it to the laboratory, and that he returned it to the safe after the laboratory returned it to him. R. 70. He stated that he delivered the evidence to Melinda Long at the state toxicology lab. R. 71.
In ruling on defense counsel’s objection to the admission into evidence of the matchbox on the ground of “who gave it to who, Prew-itt, Willingham, Blocker, Hurter,” (R. 72) the trial judge stated:
“THE COURT: I will overrule on that. As I said earlier, the cases make distinctions between missing links in chain of custody and weak links. Here there are some perhaps weak links because there are some variances of recollections among the various narcotics officers as to who might have handed it off to the other. On the other hand, the testimony does affirm that from the time it was turned over to a narcotics officer that it would have been placed under seal in the envelope, and also cases say you can take notice of the protocols and procedures of particular areas being less likely for there to be a probability of tampering than if it was just out in lay people’s hands. Under the totality of the circumstances, I am satisfied that the chain of custody is sufficiently accounted for, subject to Ms. Long taking care of her end of the loop.” R. 72-78.
At the conclusion of the trial, defense counsel “waive[d] Melinda Long’s presence” and stipulated that the substance “was tested to be cocaine.” R. 102-03.
We find that the chain of custody, although susceptible to criticism, is sufficient to authorize the introduction into evidence of the matchbox containing the crack cocaine. Here, there are no missing links in the chain of custody. In fact, the problem in this case is that there is an extra link in the chain. Each officer who handled the cocaine testified at trial.[3] The inconsistencies and conflicts concerned from which officer each officer had received the cocaine. There was no allegation that the cocaine had been misplaced or tampered with. See Gayle v. State, 591 So.2d 153, 156 (Ala.Cr.App.1991) (wherein this Court noted that the appellant made no allegation that the evidence had been tampered with).
Under these circumstances, we find that the “chain of custody problems relate to the reliability, rather than the admissibility, of the evidence. Williams v. State, 375 So.2d 1257, 1267 (Ala.Cr.App.), cert. denied, 375 So.2d 1271 (Ala.1979).” Ex parte Pierce, 612 So.2d 516, 519 (Ala.1992), cert. denied, — U.S. —, 114 S.Ct. 201, 126 L.Ed.2d 158 (1993).
*1340 “The purpose, then of establishing a chain of custody is to satisfy the court that it is reasonably probable that the exhibit is authentic and that no one has altered or tampered with the proffered physical exhibit. ... A chain of custody only need be proved to a reasonable probability. One need not negate remote possibilities of substitution, alteration, or tampering with proffered physical evidence in order to establish a proper chain of custody. Any conflict in the evidence concerning the chain of custody is addressed to the weight of the proffered physical exhibit as opposed to its admissibility. In essence, what must be shown to introduce physical evidence is that the proffered item is the same object and that it is in substantially the same condition as it was at the commencement of the chain. A weak link in the chain affects the credibility of the evidence; a missing link affects its admissibility.”
J. Colquitt, Alabama Law of Evidence § 9.1(c) at 484 (1990) (footnote omitted). See also Green v. Alabama Power Co., 597 So.2d 1325, 1328-29 (Ala.1992); Ex parte Holton, 590 So.2d 918, 919-20 (Ala.1991); Ex parte Williams, 548 So.2d 518, 520 (Ala.1989).
Here, as in Reed v. State, 547 So.2d 594, 595 (Ala.Cr.App.1988), reversed on other grounds, 547 So.2d 596 (Ala.1989), we find that the conflicting testimony of the police officers as to the custody of the cocaine
“created only a weak link and not a break in the chain of custody of the cocaine. ‘As such, it “presents a question of the credit and weight to be accorded rather than of the admissibility of the item.” ’ The general rule is, ‘[T]he fact that witnesses for the prosecution contradict or give evidence tending to impeach one another does not preclude a verdict being based on the testimony of such of them as may be believed.’ Jones v. State, 469 So.2d 713, 716 (Ala.Cr.App.1985).”
See also Smith v. State, 628 So.2d 1032, 1034 (Ala.Cr.App.1993); Hancock v. State, 587 So.2d 1040, 1045 (Ala.Cr.App.1991); Sabiar v. State, 526 So.2d 661, 668 (Ala.Cr.App.1988), cert. quashed, 565 So.2d 1287 (Ala.1990).
“At best, the defendant has only established the possibility that there were ‘weak links’ in the chain of custody. “Where a weak link in the chain of custody is found, the weight and credit afforded the evidence, rather than its admissibility, is questioned.’ Ex parte Williams, 548 So.2d 518, 520 (Ala.1989). The prosecution is not required to ‘negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.’ Williams, 548 So.2d at 520 (quoting Ex parte Williams, 505 So.2d 1254, 1255 (Ala.1987))....
“Any conflict in the witnesses’ testimony affected the credibility but not the admissibility of that testimony. ‘[Conflicts of testimony concerning the chain of custody go to the credibility rather than the admissibility of the evidence.’ Lott v. State, 456 So.2d 857, 861 (Ala.Cr.App.1984). Accord, Reed v. State, 547 So.2d 594, 595 (Ala.Cr.App.1988), reversed on other grounds, 547 So.2d 596 (Ala.1989); Carlisle v. State, 533 So.2d 645, 652 (Ala.Cr.App.1987); Stevens v. State, 506 So.2d 373, 375-76 (Ala.Cr.App.1986); Slaughter v. State, 411 So.2d 819, 823 (Ala.Cr.App.1981). Compare Battles v. State, 491 So.2d 1025, 1030-32 (Ala.Cr.App.1985) (testimony could not reasonably be reconciled).”
Presley v. State, 587 So.2d 1016, 1022 (Ala.Cr.App.1990), reversed on other grounds, 587 So.2d 1022 (Ala.1991).
“Circumstantial evidence is generally sufficient to authenticate the item sought to be entered into evidence, except when there appears to be evidence that the item of evidence was tampered with or that a substitution was made while the item was in the custody of the link who has failed to appear and testify.” Holton, 590 So.2d at 920 (also noting that “[a] sealed envelope was adequate circumstantial evidence to establish the handling and safeguarding of the item by [the officer] to treat the item as authenticated”).
In this case, the identity and continuity of the possession of the cocaine was sufficiently *1341 shown to afford ample assurances of authenticity and integrity.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. Rule 1, A.R.Juv.P., provides that when the Rules of Juvenile Procedure or statutes do not specify the procedure to be followed in juvenile court, the Rules of Civil Procedure are applicable.

. "The circuit court and the district court shall exercise original concurrent juvenile jurisdiction sitting as the juvenile court.” Ala.Code 1975, § 12-15-2(a).

. It was stipulated that the cocaine was properly received and handled by the forensic lab.