New Properties, L.L.C. ("New Properties"), and Lewis F. Webb appeal from the judgment of the trial court in favor of Harold Stewart in Stewart's action against New Properties and Webb alleging breach of contract and fraud. We affirm.
 Facts
Stewart operated an Amoco gasoline service station located in Eden, Alabama, pursuant to a lease from New Properties ("the Eden Amoco"). New Properties had originally leased the station to Wilson Oil Company, which in February 2000 assigned the lease to Stewart. The Eden Amoco housed a convenience store and a "Sneaky Pete's" restaurant franchise. In late 2000 or early 2001, Webb, who is described in the record as the "managing general partner" for New Properties asked Stewart if he would be interested in operating *Page 799 
another New Properties Amoco gasoline service station located in Prattville ("the Prattville Amoco"). Stewart indicated that he would. On April 16, 2001, New Properties and Stewart executed a lease agreement for the Prattville Amoco ("the lease"), and Stewart took possession of the Prattville Amoco. In addition, Stewart and New Properties entered into a fuel-purchase agreement ("the distributor agreement") with Sterling Oil Company, a distributor of petroleum products. Stewart then "sold" the remaining term of the lease for the Eden Amoco to an individual named Johnny Whitehead.
Apparently, although Stewart was operating the service station out of the building, a portion of the Prattville Amoco building was incomplete and needed to be "built out" or finished. The parties agreed at the time the lease was executed that New Properties would complete the build-out so as to allow a Sneaky Pete's restaurant franchise to be located in the station. After several months, however, the build-out had not been completed and a Sneaky Pete's restaurant had not been installed.
On September 5, 2001, Stewart sued New Properties and Sterling Oil, alleging breach of contract for failure to finish building out the Prattville Amoco. On September 13, 2001, Stewart was asked to vacate the Prattville Amoco because he allegedly had failed to pay rent. On November 9, 2001, New Properties filed a counterclaim against Stewart, alleging failure to pay rent under the lease. On January 15, 2002, Stewart amended his complaint to add Webb as a defendant and to allege counts of fraud against both Webb and New Properties. Sterling Oil was dismissed from the case on January 30, 2002. New Properties then amended its counterclaim on May 21, 2002, to claim that Stewart owed it rent and other expenses for the Eden Amoco for the period December 2001 through May 2002.[1]
After a bench trial on January 14, 2003, the trial court on February 7, 2003, entered an order finding in favor of Stewart and denying New Properties' counterclaims. The trial court assessed damages in favor of Stewart in the amount of $250,000. New Properties and Webb filed a postjudgment motion, which was denied on April 30, 2003. New Properties and Webb then appealed.
 Standard of Review
The trial court heard ore tenus testimony. "[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust." Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). Moreover, when a trial court makes no specific findings of fact, "this Court will assume that the trial judge made those findings necessary to support the judgment." TransamericaCommercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378
(Ala. 1992). Under the ore tenus rule, "`appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence.'" Yates v. El BethelPrimitive Baptist Church, 847 So.2d 331, 345 (Ala. 2002) (quoting Ex parte Pielach, 681 So.2d 154, 155 (Ala. 1996)).
 Discussion I.
On appeal, New Properties and Webb argue that the evidence was insufficient to support a judgment against them for *Page 800 
breach of contract and fraud. Moreover, New Properties and Webb argue that the lease, on which the breach-of-contract claim is based, was vague. Stewart, on the other hand, argues that New Properties and Webb failed to preserve for appellate review the sufficiency-of-the-evidence issue because they did not raise that issue in a motion for a new trial. We agree.
Generally, in a case tried before a jury, a motion for a judgment as a matter of law at the close of the evidence and a timely posttrial motion for a judgment as a matter of law are necessary to permit an appellate court to consider the sufficiency of the evidence. Industrial Techs., Inc. v. JacobsBank, 872 So.2d 819, 825 (Ala. 2003); Barnes v. Dale,530 So.2d 770, 776-77 (Ala. 1988). See also generally Rule 50, Ala. R. Civ. P. However, "[t]his principle does not apply in a nonjury case." Ex parte James, 764 So.2d 557, 559 (Ala. 1999) (plurality opinion) (citing Seier v. Peek, 456 So.2d 1079, 1081
(Ala. 1984)). Instead, Rule 52(b), Ala. R. Civ. P., controls:
 "Upon motion of a party filed not later than thirty (30) days after judgment or entry of findings and conclusions the court may amend its findings or make additional findings or may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment or a motion for a new trial."
Although Rule 52(b) speaks to those situations in which a trial court makes findings of fact, the rule does not indicate what is to occur when the trial court makes no such findings. As Justice Lyons has noted:
 "If a court makes findings of fact in a nonjury case, Rule 52(b), Ala. R. Civ. P., excuses the losing party from objecting to the findings or moving to amend them or moving for a judgment or a new trial as a predicate for an appellate attack on the sufficiency of the evidence. By negative implication, such steps are required when the court makes no findings of fact."
Ex parte James, 764 So.2d at 561 (Lyons, J., concurring in the result) (emphasis added).
Our previous decisions addressing the issue whether a party must raise before the trial court the issue of the sufficiency of the evidence appear to be in conflict. In Securitronics ofAmerica, Inc. v. Bruno's, Inc., 414 So.2d 950 (Ala. 1982), the trial court made no findings of fact, and this Court, on appeal, held that a motion for a new trial or for findings of fact is not necessary to preserve for appellate review the issue of the sufficiency of the evidence. 414 So.2d at 951. While the majority failed to mention Rule 52, Justice Faulkner, in a dissenting opinion, stated his belief that, under Rule 52, "some method of raising grounds for review must be made at the trial level."414 So.2d at 952. In contrast, this Court held in Merchants Planters Bank Trust Co. of Arkadelphia, Arkansas v. Ensley,502 So.2d 686, 688 (Ala. 1986), a case tried without a jury in which the judgment contained findings of fact, that the appellant's failure to call the trial court's attention to an alleged error — through a motion to reconsider or otherwise — left the appellate court with nothing to review.502 So.2d at 688.
The holding of Ensley, however, seemingly conflicts with Exparte Vaughn, 495 So.2d 83 (Ala. 1986), released earlier in the year Ensley was released. In Vaughn, the *Page 801 
trial court heard the case without a jury and entered a judgment that included written findings of fact. 495 So.2d at 84. On appeal, this Court held that "Rule 52(b) provides an exemption from the requirement of invoking a ruling by the trial court on the issue of evidentiary insufficiency when written findings of fact are made." 495 So.2d at 87. We explained the rationale for this rule as follows:
 "[B]y making written findings of fact, the trial judge has had the additional opportunity to reconsider the evidence and discover and correct any error in judgment which he or she may have made upon initial review. Thus, when written findings of fact are made, they serve the same useful purpose as does an objection to the trial court's findings, a motion to amend them, a motion for a new trial, and a motion to dismiss under Rule 41(b)[, Ala. R. Civ. P.] — to permit the trial judge an opportunity to carefully review the evidence and to perfect the issues for review on appeal."
495 So.2d at 87. The question whether a party must raise the issue of the sufficiency of the evidence in a case where the judgment did not contain written findings was not before the Court in Vaughn. See also generally W.L.L. v. State,649 So.2d 1335, 1336 (Ala.Crim.App. 1994) (rejecting the argument that under Vaughn the appellant's failure to raise the issue of the sufficiency of the evidence before the trial court does not bar appellate review and holding that because the trial court did not make any written findings of fact, Vaughn did not apply);M.B. v. State, 630 So.2d 490, 491 n. 3 (Ala.Crim.App. 1993) (citing Vaughn for the proposition that "[b]ecause the trial court did not make written findings of fact in this case, the provision of Rule 52(b), [Ala.] R. Civ. P., that the issue of the sufficiency of the evidence may be raised whether or not an objection has been made does not apply").
More recently, this Court, in Ex parte James, supra, has attempted to clarify the operation of Rule 52. In James, a divorce action, the trial court, among other things, specifically awarded the wife's counsel $100,000 in attorney fees.764 So.2d at 559. The trial court made no specific findings of fact in its order, and the husband filed no postjudgment motions before appealing the attorney-fee award. In determining whether the husband had preserved the issue whether the attorney fee was reasonable, a plurality of this Court stated: "[W]hen the trial court has made no written findings of fact in a nonjury trial, a party must move for a new trial in order to preserve for review a question relating to the sufficiency or weight of the evidence." 764 So.2d at 559.[2] Subsequent decisions by the intermediate appellate courts have embraced this holding. See, e.g., N.L.H. v. State, 873 So.2d 258 (Ala. Crim.App. 2003);Cross v. Cross, 853 So.2d 241 (Ala.Civ.App. 2002); Gates v.Gates, 830 So.2d 746 (Ala.Civ.App. 2002) (all relying on James
for the proposition that when a trial court in a nonjury case does not make findings of fact the issue of the sufficiency of the evidence must be raised in a postjudgment motion).
We agree with the plurality of Justices who concurred inJames, and we hold that, in a nonjury case in which the trial court makes no specific findings of fact, a *Page 802 
party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review. See Rule 52(b), Ala. R. Civ. P.; N.L.H.,supra; Cross, supra; Gates, supra; W.L.L., supra; and M.B.,supra. To the extent it conflicts with this ruling,Securitronics of America, Inc. v. Bruno's, Inc., 414 So.2d 950
(Ala. 1982), is hereby overruled.
 II.
In this case, the trial court made no findings of fact; it simply found in favor of Stewart and awarded $250,000 in damages. New Properties and Webb filed a postjudgment motion for a new trial; however, that motion argued only (1) that absent an award of punitive damages and damages for mental anguish, Stewart failed to prove damages in excess of $53,240.40, and (2) that the trial court erred in failing to find in favor of New Properties on its counterclaim. Therefore, at best, New Properties and Webb have preserved for appellate review only those two questions. When a trial court gives no reasons in its judgment, "`this Court will assume that it made whatever findings would be necessary to support [that] judgment.'" Bagley v. Mazda Motor Corp.,864 So.2d 301, 313 (Ala. 2003) (quoting Richard Brown Auction RealEstate, Inc. v. Brown, 583 So.2d 1313, 1316 (Ala. 1991)); see also A.G. Edwards Sons, Inc. v. Syvrud, 597 So.2d 197, 200
(Ala. 1992) ("We may assume findings of fact necessary to support a trial court's judgment. . . ."); and Smith v. CiticorpPerson-to-Person Fin. Ctrs., Inc., 477 So.2d 308, 309 (Ala. 1985) (holding that when the trial court makes no formal findings of fact, an appellate court will assume it made those findings that will justify its judgment). Stewart's complaint alleged breach of contract and several theories of fraud. Although New Properties and Webb have preserved for review the issue whether the evidence supports the damages award for Stewart's breach-of-contract claim, New Properties and Webb's motion for a new trial did not challenge the trial court's finding in favor of Stewart on the fraud counts. Therefore, New Properties and Webb cannot challenge that finding on appeal. Because the judgment in favor of Stewart on his fraud counts, which sought punitive damages, would support the trial court's damages award, we must affirm the judgment of the trial court.[3] See W.D.Williams, Inc. v. Ivey, 777 So.2d 94, 98 (Ala. 2000) (in which this Court assumed that the trial court made findings of fact necessary to support its finding of fraud).[4]
New Properties has, however, preserved for review the issue whether the trial court erred in finding against New Properties on its counterclaim. Specifically, New Properties argues that it proved that Stewart failed to pay rent and other expenses, including fuel payments and insurance premiums, for the Eden Amoco.[5] *Page 803 
The evidence at trial on this issue was disputed and unclear. The testimony at trial indicated that at some point Stewart "sold" the Eden Amoco lease to Johnny Whitehead. In December 2001, however, Stewart apparently "came back" to the Eden Amoco.[6]
While the assignment of the Eden Amoco lease from Wilson Oil Company to Stewart appears in the record, the record contains no document describing or evidencing the transaction between Stewart and Whitehead. However, the parties do not dispute that Stewart "sold" the Eden Amoco lease to Whitehead.[7] Thus, the nature of Stewart's role at the Eden Amoco in December 2001 through May 2002 is unclear from the record and unexplained by the parties. The evidence as to whether Stewart was contractually or otherwise obligated to pay the rent or other expenses for the Eden Amoco is, at best, disputed. Under the ore tenus rule, we do not find the trial court's decision palpably erroneous or manifestly unjust. Therefore, we affirm its judgment.
AFFIRMED.
NABERS, C.J., and HOUSTON, SEE, LYONS, JOHNSTONE, WOODALL, and STUART, JJ., concur.
HARWOOD, J., concurs specially.
[1] Although Stewart "sold" the lease for the Eden Amoco to Whitehead, he apparently returned to the Eden Amoco in an unclear capacity in December 2001.
[2] The plurality went on to hold that, although the trial court's order contained no findings of fact and the husband did not file a postjudgment motion, the issue was nonetheless preserved. The plurality held that although there were no explicit findings of fact, the specific award of attorney fees was an adequate indication that the trial court believed the evidence sufficient to support the $100,000 award. That award, on such a specific issue, was thus considered by the plurality to constitute a written finding of fact.
[3] Stewart's complaint sought both damages for mental anguish and punitive damages. The damages award, at least insofar as the fraud counts are concerned, was not challenged in New Properties and Webb's motion for a new trial.
[4] Because we hold that the judgment on the fraud counts would support the trial court's damages award, we pretermit discussion of New Properties and Webb's arguments that they did not breach the lease.
[5] New Properties' counterclaim also alleged several claims regarding Stewart's failure to pay rent and expenses required under the lease of the Prattville Amoco. While the statement of facts in New Properties' brief recites certain facts pertinent to these claims, the argument portion of its brief asserts issues regarding only Stewart's alleged breach of the Eden Amoco lease. Consequently, we will address New Properties' counterclaims only to the extent they pertain to that lease.
[6] New Properties asserts in its brief to this Court that Stewart "took possession" of the Eden Amoco in December 2001; however, the citation to the record does not support that assertion.
[7] The Eden Amoco lease requires written consent of New Properties before the lease can be assigned. There is no evidence in the record indicating whether consent was obtained when Wilson Oil Company assigned the lease to Stewart or when Stewart subsequently transferred the lease to Whitehead.