[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 672 
Ronnie Joe Weeks and Sally Patterson (referred to collectively as "the Weekses") appeal from the trial court's order holding that Warren. C. Herlong, Jr., had a prescriptive easement across the Weekses' property. We affirm.
 Facts
The Weekses are siblings. In 1981 or 1982, they inherited property on the Magnolia River from their mother, Blanche Weeks. Jesse Johnson had deeded the property to Blanche Weeks at some point before 1981 or 1982.
Warren C. Herlong, Jr., owns property on the Magnolia River adjacent to and on the east side of the Weekses' property. H.E. Cheatham and Ettie B. Cheatham ("the Cheathams"), Herlong's godparents, had deeded the property to Herlong in 1995. The Cheathams had received title to this property in the 1950s. This case involves Herlong's access to the property.
The following time line is useful in understanding this case. In the early 1900s, a sawmill was located on what is now Herlong's property. Louis Collins owned the property at that time. Louis Collins is related to the Weekses and to Huey Collins, who also owns property in the same area.[1] An old path, known as Old Mill Road, running west to east led to the sawmill on Herlong's property. Old Mill Road is a dirt road. Old Mill Road travels over property belonging to Joe Hamric, another property owner in the area. Hamric's property is adjacent to and on the west side of the Weekses' property. As the property stood at the time of trial, Old Mill Road ran west to east from Collins Lane, a paved public road, and over Huey Collins's property, over Joe Hamric's property, over the Weekses' property, and then onto Herlong's property.
In 1965, Hamric created Hamric Lane to provide access to his property from Collins Lane. Hamric Lane, also a dirt road, runs north and south and ends where it forms a "T" intersection with Old Mill Road.
In the late 1970s, a dispute arose between Jesse Johnson, then the owner of the Weekses' property, and Ettie B. Cheatham, then the owner of Herlong's property. That dispute was settled by Johnson's giving an easement to Cheatham; that easement was in writing ("the Johnson-Cheatham easement"). That document provided Cheatham with a perpetual easement and a right-of-way upon and across the following area of Johnson's property (now the Weekses' property): *Page 673 
 "A strip of land approximately fifteen (15) feet in width being the existing drive or way running in an Easterly direction from the West line of the property of . . . Johnson to the East line thereof. Said existing drive being known as the Old Mill Road and the property of the undersigned . . . being described as follows:
 "[a description of certain of the Johnson property followed]."
The Johnson-Cheatham easement also provided:
 "The grantors hereby further agree, upon being furnished with a more definite description by the grantee and at her expense, to execute another easement appurtenant which will particularly set the land covered thereby."
Cheatham never provided a more definite description to Johnson, so the exact location of the Johnson-Cheatham easement was not established in the chain of title to either the Johnson property or the Cheatham property.
At some point after the Johnson-Cheatham easement was executed, Johnson conveyed his property to Blanche Weeks. In 1981 or 1982, Blanche Weeks died, and her children, including Ronnie Weeks and Sally Patterson, inherited the property.[2]
In 1993, Joe Hamric sold some of his land to Tynes Stringfellow. Hamric reserved an easement over Hamric Lane to access his property. As stated earlier, Hamric Lane was a dirt road; it was un-disputed that Hamric Lane was impassable at times by automobile.
In 1995, Herlong received a deed to the old sawmill property from Ettie Cheatham. In December 1997, Stringfellow granted an easement across his property, which he had obtained from Hamric, to Ronnie Weeks and Sally Patterson and their other siblings; in this easement Stringfellow granted the Weeks family the legal right to use Hamric Lane to access their property.[3]
In 1999, the Weeks family, at their own expense, "built up" Hamric Lane to make it more usable. They asked Herlong if he was interested in contributing to the costs of the improvements to Hamric Lane, but he declined. After that point, the Weeks family placed a gate across a portion of Old Mill Road where it traverses their property to prevent Herlong from using that portion of it.
In 2000, Herlong sued the Weekses ("the first lawsuit") in the Baldwin County Probate Court to determine the exact location of the Johnson-Cheatham easement across the Weekses' property. The probate court's determination was appealed to the Baldwin Circuit Court. Herlong testified that, while the first lawsuit was pending, he learned he did not have an easement over Stringfellow's property via Hamric Lane and that things were getting "sticky" among the neighbors. Herlong contacted Stringfellow and obtained the same easement from Stringfellow to use Hamric Lane that the Weekses had previously obtained. The easement from Stringfellow to Herlong is dated June 2001. Herlong described that easement as *Page 674 
identical to the one the Weeks family had obtained from Stringfellow.
During the first lawsuit, Herlong stated that his sole purpose in that action was to determine the exact location of the Johnson-Cheatham easement. Herlong hired surveyors to determine the location of the easement across the Weekses' property. In its final order, issued June 26, 2003, the circuit court adopted the surveyors' placement and declared the location determined by Herlong's surveyors to be the 15-foot easement Johnson granted to Cheatham in 1980. In its order, the circuit court noted:
 "[T]here is a small piece of property owned by the [Weekses] that lies between the south boundary of Mr. Herlong's easement and the south boundary of the [Weekses'] property and that Mr. Herlong at present has no right to cross that small piece of property to get to the easement."
The Weekses did not appeal that order.
This "small piece of property" referred to by the circuit court in its order issued in the first lawsuit was a portion of Hamric Lane immediately before it ended and where it meets Old Mill Road. This portion of Hamric Lane was on the Weekses' property, and it was not included in the 1980 Johnson-Cheatham easement. Therefore, Herlong had an easement granting him the right to use a portion of Hamric Lane and another easement granting him the right to use a portion of the Weekses' property for access to his property. However, the "small piece of property" referred to by the circuit court was necessary to connect the two easements. The parties refer to this small piece of property as "the gap." Without access to the gap, Herlong could not access his property using Hamric Lane.
In the action underlying this appeal, referred to as the "second lawsuit," Herlong attempted to gain the legal right to access the gap. In September 2003, Herlong filed another petition in the Baldwin County Probate Court, seeking to acquire a private right-of-way across the Weekses' property where the gap was located. The probate court issued an order condemning the property constituting the gap and ordered that Herlong pay the Weeks family $2,000 for that property.
The Weekses appealed to the Baldwin Circuit Court for a trial de novo. Herlong cross-appealed. Herlong's complaint, as amended, sought a private condemnation of the gap; a judgment declaring that Herlong had a right of ingress and egress over the property owned by Collins and Hamric and declaring Old Mill Road a public road; and a judgment declaring that Herlong had a prescriptive easement over the gap. By adding the declaratory-judgment counts, Herlong added Collins and Hamric as defendants in the action.[4]
The bench trial lasted one and one-half days; it began on October 25, 2004, and was resumed and completed on May 24, 2005. The trial court heard from Herlong, Huey Collins, Ronnie Weeks, Joe Hamric, Sally Patterson, and several longtime residents of the area. Numerous maps, surveys, and photographs were presented as exhibits.
At the conclusion of the bench trial, the trial judge orally stated his ruling. The trial judge declared that, based on regular and continuous use, Herlong had acquired a prescriptive easement over the gap. The trial judge also stated that Herlong had not established the necessary requirements for a prescriptive easement across *Page 675 
Collins's property, "on what is commonly called Old Mill Road, or whatever it is called. Whether he's got a real easement, the document speaks for itself." The Weekses' lawyer and the trial court engaged in extensive dialogue regarding the trial court's ruling.
On May 25, 2005, the trial court entered its final order; that order provided:
 "This matter is before the Court for a Final Hearing and after taking testimony and receiving documentary evidence, the Court finds that [Herlong] has established an easement by prescription for ingress and egress across the described lands owned by [the Weekses]. The Court further finds that [Herlong] is not entitled to recover under Count I for private condemnation of the lands."
On July 5, 2005, the Weekses filed their notice of appeal. However, while the appeal was pending, activity continued in the trial court. Herlong filed a motion entitled "Post-Judgment Motion to Enforce Judgment and Close and Distribute Accounts," and on November 7, 2005, the trial court denied in part and granted in part that motion. In its order, the trial court stated:
 "[Herlong's] Motion to Enforce Judgment is GRANTED in part and DENIED in part. [Herlong] is entitled to have an ingress and egress easement of the same width as the easement connecting to the property, i.e., 30 feet more or less. [Herlong] can be given a key to the gate in lieu of removal of the gate. [Herlong's] bond is to be refunded."
On November 22, 2005, Herlong filed another motion, entitled "Motion for Clarification or in the Alternative, for Reconsideration of this Court's Order Dated November [7], 2005." Herlong again requested that the trial court order the Weekses to remove the gates and posts at the gap, because they were prohibiting oversized vehicles, i.e., boat trailers and emergency vehicles, from accessing the gap and his property.
The Weekses opposed this motion, but, on December 13, 2005, the trial court granted Herlong's motion to clarify the November 7, 2005, order. The trial court ordered:
 "[Herlong] is entitled to an easement across approximately 7-8 feet of Defendant, Weeks[es]' property. This easement shall be the same width as the easement currently used by [Herlong] that is commonly known as `Hamric Lane,' which is approximately 30 feet wide. [The Weekses] may maintain a fence along the property line, provided that the fence and gate is [sic] not established in such a way to interfere with ingress and egress by [Herlong]. [Herlong] shall be provided a key to the gate."
On January 3, 2006, the lawyer for the Weekses filed a motion to supplement the record on appeal. The clerk of the Baldwin Circuit Court certified the supplemental record on January 26, 2006.[5]
In their brief, the Weekses raise the following issues: *Page 676 
 "I. Did the trial court commit reversible error by finding that Herlong had a prescriptive easement over the Weeks family land?"
 "II. Did the trial court alter or amend the final judgment entered on May 25, 2005, after the time allowed by law and without jurisdiction and without evidence to support that amended judgment?"
(Weekses' brief, at 8.)
 Standard of Review
In New Properties, L.L.C. v. Stewart, 905 So.2d 797
(Ala. 2004), this Court stated:
 "The trial court heard ore tenus testimony. `[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So.2d 122, 125
(Ala. 2002). Moreover, when a trial court makes no specific findings of fact, `this Court will assume that the trial judge made those findings necessary to support the judgment.' Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala. 1992). Under the ore tenus rule, `"appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence." `Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331, 345 (Ala. 2002) (quoting Ex parte Pielach, 681 So.2d 154, 155 (Ala. 1996))."
905 So.2d at 799.
 Analysis "I. Did the trial court commit reversible error by finding that Herlong had a prescriptive easement over the Weeks family land?"
The Weekses first argue that Herlong's evidence did not establish the necessary elements of a prescriptive easement over the Weekses' property. Herlong, on the other hand, asserts that the Weekses failed to preserve this issue for appellate review because, he argues, the Weekses did not raise this issue before the trial court at the proper time. We conclude that the Weekses preserved their challenge to the sufficiency of the evidence.
In New Properties, L.L.C., supra, this Court addressed the manner in which a party preserves a challenge to the sufficiency of the evidence when, in a bench trial, a trial court issues its ruling without issuing findings of fact. In that case, this Court stated:
 "Although Rule 52(b) speaks to those situations in which a trial court makes findings of fact, the rule does not indicate what is to occur when the trial court makes no such findings. As Justice Lyons has noted:
 "`If a court makes findings of fact in a nonjury case, Rule 52(b), Ala. R. Civ. P., excuses the losing party from objecting to the findings or moving to amend them or moving for a judgment or a new trial as a predicate for an appellate attack on the sufficiency of the evidence. By negative implication, such steps are required when the court makes no findings of fact'"
905 So.2d at 800 (quoting Ex parte James,764 So.2d 557, 561 (Ala. 1999) (plurality opinion) (Lyons, J., concurring in the result)) (emphasis in New Properties ). After reviewing conflicting caselaw on the subject, the Court inNew Properties stated:
 "[W]e hold that, in a nonjury case in which the trial court makes no specific findings of fact, a party must move for a *Page 677 
new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review. See Rule 52(b), Ala. R. Civ. P. . . ."
905 So.2d at 801-02.[6]
In this case, the trial court's May 25, 2005, order included no written findings of fact. Thus, based on a simple reading of the pleadings, it would appear that Herlong is correct. However, the Weekses argue that the dialogue that occurred between the trial judge and the Weekses' counsel at the end of the bench trial constituted "findings of fact" sufficient to preserve their challenge. At the conclusion of the bench trial, the trial judge stated:
 "[Trial judge:] I do find there is a prescriptive easement, that 5 by 30 feet has been used. It is to have the amount of property the prescriptive across Hamric Lane and then the actual easement for over 20 years to be frustrated in being able to use the last 5 feet by 30 feet wide, that, in fact, there was not a break in the chain or the use of it and that there is a prescriptive easement across there [sic].
 ". . . .
 "[Weekses' counsel:] We need a ruling on all three of [Herlong's] counts for purposes of appeal. I can tell you what those are. . . . His first claim and it stayed that way for a long time was that he had a condemnation claim for that 5 by 30 strip. Second claim was —
 "[Trial judge:] Well, I'll tell y'all, I don't know anything about private condemnations. So, I mean, I've never handled one of those. I've handled easements before. I've dealt with that but I don't know how to handle a private condemnation. I would assume that if an easement is established, then there's no need for a private condemnation so based on my ruling that the prescriptive easement did exist, I'm gonna deny the claim for this private condemnation. I don't know if that's what y'all were searching for or not —
 "[Weekses' counsel:] The second claim right before the last trial was that if he didn't have any other kind of access down Old Mill Road, then he had a prescriptive right to cross Collins and Hamric's land on Old Mill Road, that he had a prescriptive right to cross there. I would think that's probably true since he's got an express deeded access. He's probably got more than a prescriptive easement.
 "[Trial judge:] I don't think that's necessarily true. . . . I do not find that he has a prescriptive easement on what's commonly referred to as Old Mill Road, whatever it may be, across the Collins's property, that he is not — Mr. Herlong has not established requisite requirements to establish a prescriptive easement across it. Whether he's got a real easement, the document speaks for itself. If there's a deeded easement, there's a deeded easement.
 "[Weekses' counsel:] And your ruling, Your Honor, is that he's got a prescriptive easement over the 5 by 30 plot at *Page 678 
issue here that's unbroken even by that 1980 easement and the blocking in `99?
 "[Trial court:] 1980 real easement doesn't terminate the prescriptive easement rights that you had because that easement didn't affect it. I mean —
 "[Weekses' counsel:] Just wanted a ruling because that was —
 "[Trial court:] I gave you my ruling but I don't like — . . . I don't like you or any other lawyer giving the ruling and then saying is that your ruling because then you're wording it the way you want it to be and that's not what I said. What I said was — here's what I said, he has a prescriptive easement for — because he used regular and continuous use across that 5 by 30 feet and I didn't say anything else. That's all I said. What it comes to whatever count that is.
 "[Weekses' counsel:] Yes, your Honor. That's Count Three."
Although the Weekses made no motion for a judgment as a matter of law either at the close of Herlong's case or at the conclusion of all the evidence and did not request a new trial, we find that the trial court's reasoning is stated adequately in the record. The purpose of findings of fact is to allow the parties and the appellate court to understand the basis of the trial court's order. The exchange between the Weekses' counsel and the trial judge provides a basis for an appeal on the sufficiency of the evidence as it relates to the prescriptive easement over the gap. Thus, the Weekses' challenge to the sufficiency of Herlong's evidence has been preserved for appellate review.
Although we agree that the Weekses have properly preserved their right to challenge on appeal the sufficiency of the evidence to support the trial court's ruling, we conclude that the Weekses have not properly preserved the right to raise on appeal their next argument — that the doctrines of res judicata and collateral estoppel barred the trial court's judgment holding that Herlong had a prescriptive easement over the gap. Rule 8(c), Ala. R. Civ. P., states, in part:
 "(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense."
(Emphasis added.) The language of Rule 8(c) is mandatory. InBechtel v. Crown Central Petroleum Corp.,451 So.2d 793 (Ala. 1984), this Court stated:
 "[An affirmative defense] is required to be specially pleaded under Rule 8(c). See Nash v. Vann, 390 So.2d 301, 303 (Ala.Civ.App. 1980). Under the Federal Rules of Civil Procedure, after which our rules are modeled, the consequences of a party's failure to plead an affirmative defense have been explained as follows:
 "`If an affirmative defense is not pleaded it is waived to the extent that the party who should have pleaded the affirmative defense may not introduce evidence in support thereof, unless the adverse party makes no objection in which case the issues are enlarged, or unless an amendment to set the affirmative defense is properly made.'
 "2A J. Moore, Federal Practice § 8.273 at 8-251 (2d Ed. 1948). See Funding Systems Leasing Corporation v. Pugh, 530 F.2d 91 (5th Cir. 1976)."
451 So.2d at 796.
The Weekses did not assert res judicata and collateral estoppel in any of the pleadings filed with the trial court and did not *Page 679 
attempt to amend their pleadings to add those defenses. Further, the Weekses' lawyer did not argue those affirmative defenses before the trial court. For these reasons, we conclude that the Weekses waived the affirmative defenses of res judicata and collateral estoppel.
Having found that the Weekses preserved their challenge to the sufficiency of Herlong's evidence in support of a prescriptive easement, we now review the evidence presented to the trial court in support of that claim. Upon that review, we hold that the record contains evidence sufficient to support the trial court's ruling. The trial court heard testimony, albeit disputed and confusing, that Herlong and his predecessors, openly and without the permission of the owner of the land, continuously used Hamric Lane, including the gap, as a means of ingress and egress to their property since 1965. Collins's testimony agreed with Herlong's testimony on these essential elements. The other witnesses provided differing accounts of how Herlong and his predecessors had accessed the property now owned by Herlong throughout the years.
The testimony provided by Herlong and by Collins, if believed, was sufficient to establish the requisite elements of a prescriptive easement. See Jones v. Johnson,827 So.2d 768, 771-72 (Ala. 2002):
 "This Court has often stated that `[a]n easement is an interest in land and, generally, can be created in only three ways: first, by deed; second, by prescription; and, third, by adverse use for the statutory period.' An easement by prescription is acquired by use of `"the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner."'"
(Quoting Blalock v. Conzelman, 751 So.2d 2, 4
(Ala. 1999), quoting, in turn, Bull v. Salsman,435 So.2d 27, 29 (Ala. 1983) (citations omitted).) See alsoApley v. Tagert, 584 So.2d 816, 817-18 (Ala. 1991).
When the trial court receives evidence ore tenus and resolves a conflict of fact in favor of one party, this Court will not substitute its judgment for that of the trial court unless the trial court's decision is palpably erroneous or manifestly unjust. Philpot v. State, 843 So.2d 122, 125
(Ala. 2002). The trial court's resolution of this disputed issue is supported by reasonable inferences to be drawn from the ore tenus evidence, and, although we might not have resolved the issue as the trial judge did, we conclude that his decision is not palpably erroneous or manifestly unjust. We affirm the trial court's judgment as stated in the May 25, 2005, order insofar as it holds that Herlong has a prescriptive easement over the gap.
 "II. Did the trial court alter or amend the final judgment entered on May 25, 2005, after the time allowed by law and without jurisdiction and without evidence to support that amended judgment?"
The Weekses next assert that the trial court had no jurisdiction to modify its final order after the notice of appeal was filed. In order to address this issue, we review the actions of the trial court in chronological order.
The initial order of the trial court was entered on May 25, 2005. The Weekses filed their notice of appeal on July 5, 2005. On September 13, 2005, Herlong filed a motion entitled "Post-Judgment Motion to Enforce Judgment and Close and Distribute Accounts." In that motion, he asked the trial court to compel the Weekses to comply with the May 25, 2005, order by removing all fencing and gates so that Herlong could access the gap. He argued *Page 680 
that, although the Weekses had filed an appeal of the trial court's judgment, they had never posted a supersedeas bond to stay the judgment and, thus, that the judgment was enforceable even while the case was pending on appeal. Herlong also requested that the trial court direct the clerk to refund the money Herlong had posted as security for the appeal to the circuit court.
The Weekses responded in a letter to the trial court that there was no need to remove the gates, because Herlong had full access to his easement by using those gates. The parties then debated extensively in documents filed in the trial court whether the easement granted to Herlong was 30 feet wide or 15 feet wide.
On November 7, 2005, the trial court granted in part and denied in part Herlong's motion to enforce the judgment. The trial court granted the portion of Herlong's motion requesting that his security for his cross-appeal to the circuit court be refunded. The trial court also stated that Herlong was to have an easement "the same width as the easement connecting to the property, i.e., 30 feet more or less." The trial court also stated that Herlong could "be given a key to the gate in lieu of removal of the gate."
We find no error in the trial court's issuing the November 7, 2005, order. The Weekses did not file a supersedeas bond; therefore, the trial court retained jurisdiction to enforce the judgment, and this jurisdiction continued even after the notice of appeal was filed. See George v. Sims,888 So.2d 1224, 1227 (Ala. 2004) (even after the expiration of 30 days, a trial court has "`residual jurisdiction or authority to take certain actions necessary to enforce or interpret a final judgment'").
The trial court was also entitled to correct its previous order, pursuant to Rule 60(a), Ala. R. Civ. P. That rule provides:
 "(a) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal or thereafter, such mistakes may be so corrected by the trial court. Whenever necessary a transcript of the record as corrected may be certified to the appellate court in response to a writ of certiorari or like writ."
Under this procedural rule, the trial court may correct its judgment or order at any time, even while an appeal is pending. The term "clerical mistakes" as used within this rule is not limited solely to errors by the clerk in transcription; "clerical mistakes" also include errors by others, such as a jury foreman, counsel, a party, or the judge. ContinentalOil Co. v. Williams, 370 So.2d 953 (Ala. 1979). However, a "Rule 60(a) motion can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what was originally pronounced." Committee Comments on 1973 Adoption, Rule 60, Ala. R. Civ. P.
We conclude that the portion of the trial court's November 7, 2005, order addressing the dimensions of the easement granted Herlong was a correction of a mistake or omission in its May 25, 2005, order and was valid under Rule 60(a), Ala. R. Civ. P. The main focus of the bench trial was to determine whether Herlong possessed an easement across the gap. Even more significantly, in its oral exchange with the Weekses' counsel at the conclusion of the bench trial, the trial judge expressly stated that Herlong had a prescriptive easement, based on "regular and continuous use across that 5 by 30 feet" of the Weekses' *Page 681 
property. At trial, the parties often referred to the gap as a 5-by-30-foot strip. Thus, the original ruling of the trial court was that Herlong had an easement across the gap.
However, the trial court's written order of May 25, 2005, failed to specify the dimensions of the prescriptive easement it had declared in its oral ruling. Because the November 7, 2005, order merely corrected an omission in the May 25, 2005, judgment, the trial court was authorized under Rule 60(a), Ala. R. Civ. P., to issue that correction. See, e.g., Merchant v. Merchant,599 So.2d 1198 (Ala.Civ.App. 1992) (trial court had authority to correct its previous order in which it had failed to reduce to writing its order that husband pay wife's attorney fees; the correction was not a modification or change from divorce judgment, nor a reconsideration of contrary announcement, but was based on the transcript of an earlier proceeding and on trial court's recollection of what had happened).
We also consider the trial court's December 13, 2005, order to be a correction of its earlier orders. This order was the result of Herlong's November 22, 2005, motion entitled "Motion for Clarification or in the Alternative, for Reconsideration of this Court's Order dated November [7], 2005." Herlong again requested that the trial court order the Weekses to remove the gates and posts from the area of the easement, because they prohibited oversized vehicles such as boat trailers and emergency vehicles from entering Herlong's property. Herlong argued that the gates and posts at either end of the gap would not accommodate emergency vehicles. On December 13, 2005, the trial court issued another order. In that order, the trial court stated:
 "The parties have filed motions and submitted letters to the Court asking for clarification of the Court's findings or, in the alternative, amending the findings. In order to clarify the previous orders the Court finds:
 "[Herlong] is entitled to an easement across approximately 7-8 feet of Defendant, Weeks[es]' property. This easement shall be the same width as the easement currently used by [Herlong] that is commonly known as `Hamric Lane,' which is approximately 30 feet wide. [The Weekses] may maintain a fence along the property line, provided that the fence and gate is [sic] not established in such a way to interfere with ingress and egress by [Herlong]. [Herlong] shall be provided a key to the gate.
 "All other portions of the previous findings that are not inconsistent with this order shall remain in force."
In this order, the trial court simply cleared up the confusion surrounding the dimensions of the gap and the Weekses' maintenance of a gate. Although the trial court previously had announced that Herlong was entitled to an easement measuring 5 feet by 30 feet, those dimensions did not encompass the entire area of the gap discussed at trial and did not match the dimensions of the gap shown on an exhibit at the trial. Additionally, Herlong testified at trial that "everyone, I think, came to realize that Hamric Lane did not connect to my [earlier] easement by a gap of about five and a half feet on the west and eight feet on the east." Thus, the trial court's December 13, 2005, order corrected the dimensions of the easement awarded to Herlong; those corrections were in accord with the evidence submitted at trial. The trial court was entitled, pursuant to Rule 60(a), Ala. R. Civ. P., to correct this error.
For the reasons stated, we affirm the trial court's judgment.
 AFFIRMED. *Page 682 
NABERS, C.J., and SEE, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS, J., recuses himself.
[1] Although the record does not present a complete chain of title to all property formerly owned by Louis Collins, presumably Huey Collins received title to the property he currently owns through Louis Collins's chain of title. We also presume that Louis Collins deeded other portions of his property to third parties at various times.
[2] In a prior lawsuit involving Herlong and the Weekses, another Weeks sibling, Adele Camp, was named as a defendant. Adele Camp is also mentioned in some of the pleadings in this action. However, Adele Camp does not appear to have been named as a defendant in this action.
[3] At that time, Herlong asked the Weekses to obtain the identical easement for him from Stringfellow. However, the easement in favor of Herlong was not obtained at this time because, Ronnie Joe Weeks stated, the Weeks family did not want to pay on Herlong's behalf the legal fees associated with obtaining an easement in his favor.
[4] In his third amendment to the complaint, Herlong also added Baldwin County as a defendant. Herlong characterized the Weekses' position as arguing that Old Mill Road was a public road. Herlong asserted that if the trial court adopted this position, then Baldwin County would be responsible for the maintenance of Old Mill Road.
[5] Herlong has filed with this Court a motion to strike the supplemental record on appeal and all portions of the Weekses' briefs that rely on the supplemental record. The Weekses responded with a motion to accept the supplemental record. On April 10, 2006, we denied Herlong's motion and granted the Weekses' motion to accept the supplemental record. See Rule 10(f), Ala. R.App. P. As noted by the Weekses in their reply brief, the orders of the trial court dated November 7, 2005, and December 13, 2005, are contained only in the supplemental record. Herlong cannot object to this Court's consideration of the supplemental record and, at the same time, argue that those orders are valid and binding upon the Weekses.
[6] Rule 52(b), Ala. R. Civ. P., provides:
 "Upon motion of a party filed not later than thirty (30) days after judgment or entry of findings and conclusions the court may amend its findings or make additional findings or may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment or a motion for a new trial."