[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 38 
Dana Truxillo Henderson ("the mother") appeals from a judgment of the Baldwin Circuit Court granting the petition of Damon Michael Henderson ("the father") to prohibit her relocation to Kodiak, Alaska, with the parties' two minor children, twin daughters ("the children") born of the parties' marriage on July 15, 1998.
In October 23, 2003, a judgment was rendered divorcing the father and the mother and awarding the parties joint legal custody of the children, with the mother having sole physical' custody. The father and the mother then married other people. Ronnie Jester, the mother's current husband and an active servicemember in the United States Coast Guard, received orders from his superiors in the Coast Guard requiring him to relocate to Kodiak, Alaska. The mother informed the father that she planned to relocate to Alaska with the children and Jester. The father filed a petition in the trial court seeking to prohibit that relocation and seeking custody; the mother filed an answer. The trial court held a hearing on the matter, during which it heard ore tenus evidence.
The evidence adduced at that hearing indicated that the father, his current wife, and the children's paternal grandparents had been very involved in the children's lives and that they would not be able to maintain that same level of involvement if the mother were allowed to relocate to Alaska with the children. The father testified that he had visited the children, on average, between 25 and 26 days each month and had paid more money in child support than the amount required by the divorce judgment. The father testified that he had regularly driven the children to the paternal grandmother's house before school to eat breakfast, had driven them to school after breakfast, and had picked them up after school. The father stated that he had been very involved in the children's education, had worked with their teachers, and had taken the children to various after-school activities (including dance classes and gymnastics classes). The father and his current wife had also taken them on numerous vacations, e.g., trips to the Disney World amusement park in Florida, to beaches, and to ski destinations. The paternal grandfather testified that he and the paternal grandmother have also had a special relationship with the children, that they had been involved in the children's lives since their birth, and that he did not feel that it was in the children's best interests to move to Alaska. The mother agreed that the father and the paternal grandparents were wonderful people and had "spent a lot of time" with the children.
The mother admitted that if she were allowed to move to Alaska — a move more than 4,800 miles away from the father and paternal grandparents — it would be impossible for the father and the paternal grand-parents to maintain the same level of involvement with the children or to exercise weekend visitation with them. Evidence further indicated that it would take approximately 24 hours to travel one way by airplane from Kodiak, Alaska, to Baldwin County, Alabama, and that airfare would be approximately $1,000 per person. Additionally, the mother testified that she would remain in Alabama if the court did not allow her to relocate to Alaska with the children. Jester testified that if the children were allowed to relocate with him and the mother to Alaska, they would live on a Coast Guard base where the mother *Page 39 
would not be required to work and could stay at home with the children.
At the conclusion of the testimony, the trial court stated:
 "Considering the closeness of the ties here in Alabama and the newness of ties that would take these girls to Alaska, I am going to require that the [children] remain here. Since [the mother] is amenable to being here with the girls, then I will deny the petition to change custody so that [the mother] and [the children] may remain together."
The trial court entered a judgment granting the father's petition to prohibit the mother's relocation to Alaska with the children, but denying the father's petition seeking custody. The mother filed a motion to alter, amend, or vacate the judgment; the trial court denied that motion. The mother timely appealed to this court.
The mother first contends that the trial court erred in applying the Alabama Parent-Child Relationship Protection Act ("the Act"), § 30-3-160 et seq., Ala. Code 1975, because, she claims, the exception to the application of the Act for a person on active military service also applies to her since her current husband has been transferred to Alaska pursuant to an involuntary military order.[1]
Our standard of review is well settled. A trial court's judgment based on ore tenus evidence will be presumed correct and will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that the judgment is unsupported by the evidence so as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060, 1062
(Ala.Civ.App. 1995). However, when an appellate court is presented with an issue of law, we review the judgment of the trial court as to that issue de novo. Ex parte Perkins,646 So.2d 46 (Ala. 1994).
To support her contentions, the mother relies on § 30-3-162(a), Ala. Code 1975, a portion of the Act, which states:
 "Except as provided in subsection (c) of Section 30-3-165, this article shall not apply to a person who is on active military service in the Armed Forces of the United States of America and is being transferred or relocated pursuant to a non-voluntary order from the government."
The applicable rules of statutory construction are clear:
 "`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood *Page 40 
meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"
Ex parte Master Boat Builders, Inc., 779 So.2d 192,196 (Ala. 2000) (quoting IMED Corp. v. Systems Eng'g Assocs.Corp., 602 So.2d 344, 346 (Ala. 1992)). See alsoKimberly-Clark Corp. v. Eagerton, 445 So.2d 566
(Ala.Civ.App. 1983).
Had the legislature intended to include within the scope of § 30-3-162(a) both a person who is on active duty in the armed forces and that person's spouse, it would have been simple for the legislature to do so. Instead, the legislature stated that the exception to the Act shall apply only to "a person who is on active military service in the Armed Forces of the United States of America and is being transferred or relocated pursuant to a non-voluntary order from the government." The use of the phrase "a person who is on active military service in the Armed Forces" in the Act indicates that the legislature intended for the exception to applyonly to the person serving in the Armed Forces. In addition, the Act further requires (by using the conjunction "and") that the "person" must be "transferred or relocated pursuant to a non-voluntary order from the government." The mother has not herself been required to relocate pursuant to a non-voluntary order from the government; that relocation order only applied to Jester. In fact, the mother testified that if the court did not allow her to relocate with the children, then she would remain in Alabama, which demonstrates that, unlike Jester, the mother can choose to remain in Alabama. Therefore, we conclude that the mother's argument is without merit.
The mother also contends that even if the Act applies to her, the trial court acted outside its discretion by not permitting her to relocate the children to Alaska without first considering the factors set out in § 30-3-169.3, Ala. Code 1975.
Section 30-3-169.3, Ala. Code 1975, entitled "Change of custody," states, in pertinent part:
 "(a) Upon the entry of a temporary order or upon final judgment permitting the change of principal residence of a child, a court may consider a proposed change of principal residence of a child as a factor to support a change of custody of the child. In determining whether a proposed or actual change of principal residence of a minor child should cause a change in custody of that child, a court shall take into account all factors affecting the child, including, but not limited to, the following:
 "(1) The nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate with the child and with the non-relocating person, siblings, and other significant persons or institutions in the child's life.
 "(2) The age, developmental stage, needs of the child, and the likely impact the change of principal residence of a child will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
 "(3) The increase in travel time for the child created by the change in principal residence of the child or a person entitled to custody of or visitation with the child.
 "(4) The availability and cost of alternate means of communication between the child and the non-relocating party. *Page 41 
 "(5) The feasibility of preserving the relationship between the non-relocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
 "(6) The preference of the child, taking into consideration the age and maturity of the child.
 "(7) The degree to which a change or proposed change of the principal residence of the child will result in uprooting the child as compared to the degree to which a modification of the custody of the child will result in uprooting the child.
 "(8) The extent to which custody and visitation rights have been allowed and exercised.
 "(9) Whether there is an established pattern of conduct of the person seeking to change the principal residence of a child, either to promote or thwart the relationship of the child and the non-relocating person.
 "(10) Whether the person seeking to change the principal residence of a child, once out of the jurisdiction, is likely to comply with any new visitation arrangement and the disposition of that person to foster a joint parenting arrangement with the non-relocating party.
 "(11) Whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the change of principal residence of the child and the child, including, but not limited to, financial or emotional benefit or educational opportunities.
 "(12) Whether or not a support system is available in the area of the proposed new residence of the child, especially in the event of an emergency or disability to the person having custody of the child.
 "(13) Whether or not the proposed new residence of a child is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system, or which otherwise presents a substantial risk of specific and serious harm to the child.
 "(14) The stability of the family unit of the persons entitled to custody of and visitation with a child.
 "(15) The reasons of each person for seeking or opposing a change of principal residence of a child.
 "(16) Evidence relating to a history of domestic violence or child abuse.
 "(17) Any other factor that in the opinion of the court is material to the general issue or otherwise provided by law.
 "(b) The court making a determination of such issue shall enter an order granting the objection to the change or proposed change of principal residence of a child, denying the objection to the change or proposed change of principal residence of a child, or any other appropriate relief based upon the facts of the case."
(Emphasis added.)
As stated in § 30-3-169.3, Ala. Code 1975, the trial court shall take into account the factors referred to by the motherwhen determining whether a change of principal residence ofa minor child should cause a change in custody of thatchild. In other words, § 30-3-169.3 only requires the trial court to consider those factors when determining whether a change of the principal residence should cause a change incustody. Thus, the trial court was not required to consider those factors in its determination whether to allow a change in the *Page 42 
principal residence of the children. The circumstances requiring consideration of the factors set out in § 30-3-169.3, Ala. Code 1975, were not present.
Moreover, the Act specifically sets forth a rebuttable presumption that a change of principal residence of children would riot be in their best interests. Section 30-3-169.4, Ala. Code 1975, entitled "Burden of proof," states:
 "In proceedings under this article unless there has been a determination that the party objecting to the change of the principal residence of the child has been found to have committed domestic violence or child abuse, there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child.
The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party."
(Emphasis added.)
Because the' father objected to the change in residence and had not been found to have committed domestic violence or child abuse, it was the mother's burden to rebut the presumption that the change in residence she was seeking for the children would not be in the children's best interests. Although evidence was presented that the mother would be able to stay at home with the children on the Coast Guard base in Alaska, no evidence was presented regarding the quality of the school system* the existence and quality of extracurricular activities in which the children could participate, the number of people other than the wife and Jester with whom the children might form relationships, or the quality of the living conditions. Evidence was adduced at trial indicating that the father and the paternal grandparents had had a very close relationship with the children and that moving to Alaska would impede those relationships. Thus, we cannot conclude that the trial court acted outside its discretion in not permitting the mother to relocate the children to Alaska.
Based on the foregoing facts and authorities, the trial court's judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] The mother also contends that the federal Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501 et seq., classifies her as a "dependent" and, through some unexplained means, prevents the enforcement of the Act in this factual setting. The purpose of the federal act is (1) to enable servicemembers "to devote their entire energy to the defense needs of the Nation" and (2) to temporarily suspend judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service. 50 U.S.C. App. §§ 502. Assuming, without deciding, that the protection afforded service members under the federal act could be extended to the mother, both the mother and Jester were present at the proceeding, and neither of them presented any evidence to indicate that Jester had been pulled away from his duty with the Coast Guard to attend the proceeding so as to necessitate a temporary suspension of the relocation action.
Moreover, her argument that the application of the Act had the effect of depriving her the protection of the standard set out in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), is meritless because the trial court did not modify its previous custody judgment.