Rel: February 13, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0643

_____

### Arundhati Sawant

### v.

### Gurudatta Anand Naik

### Appeal from Jefferson Circuit Court
### (DR-19-901807.01)

EDWARDS, Judge.

Arundhati Sawant ("the former wife") appeals from a judgment entered by the Jefferson Circuit Court ("the trial court") that awarded Gurudatta Anand Naik ("the former husband") physical custody of the parties' child, A.G.N. ("the child"), who was born on August 26, 2019, and

found the former wife in contempt of a September 2021 divorce judgment entered by the trial court. We affirm the trial court's judgment.

Procedural Background

On September 7, 2021, the trial court entered a judgment divorcing the former husband and the former wife; that judgment incorporated a settlement agreement entered between the parties. Pursuant to the divorce judgment, the former husband and the former wife were awarded joint legal custody of the child, with the former wife exercising "primary physical custody" of the child,[1] subject to the former husband's visitation, which was to occur on the first, third, and fifth weekends of each month, as well as on specified holidays and during the summertime. The divorce judgment also contained the child-custody language required by Ala. Code 1975, § 30-3-166, which is a part of the Alabama Parent-Child Relationship Protection Act ("the Act"), Ala. Code 1975, § 30-3-160 et seq.

In April 2025, the former wife, pursuant to the Act, provided the former husband with written notice of her intent to relocate with the

_____

[1]"Such an award is properly termed an award of 'sole physical custody' of a child. § 30-3-151(5), Ala. Code 1975." Ja.T. v. N.T., 353 So. 3d 558, 559 n.1 (Ala. Civ. App. 2021).

child to Jackson, Mississippi, effective June 10, 2025. See Ala. Code 1975, § 30-3-163 (providing that a person who has the right to establish the principal residence of a child shall provide notice to every other person entitled to custody of or visitation with the child of a proposed change of the child's principal residence). On April 23, 2025, the former husband filed a complaint in the trial court objecting to the relocation of the principal residence of the child. See Ala. Code 1975, § 30-3-169 (providing that "[t]he person entitled to determine the principal residence of a child may change the principal residence of a child after providing notice as provided herein unless a person entitled to notice files a proceeding seeking a temporary or permanent order to prevent the change of principal residence of a child within 30 days after receipt of such notice"). The former husband's complaint also sought to modify the physical custody of the child and to hold the former wife in contempt because of her alleged violations of various provisions of the divorce judgment.

On May 14, 2025, the former wife filed a response to the former husband's complaint in which she confirmed her intent to relocate with the child to Jackson. The former wife denied all other allegations made

3

by the former husband in his complaint. On May 28, 2025, the trial court entered a pendente lite order that incorporated a temporary agreement of the parties. Pursuant to the pendente lite order, the former wife was temporarily restrained from changing the child's principal residence. The pendente lite order further temporarily modified the parties' custodial times with the child such that the former husband and the former wife would exercise alternating custodial periods every two weeks.

A trial on the former husband's complaint was conducted on July 23, 2025. On July 24, 2025, the trial court entered a judgment that, in pertinent part, awarded the former husband "primary legal and physical custody of the child";[2] awarded the former wife "secondary custody" of the child; awarded the former wife visitation with the child to occur on the first, third, and fifth weekends of each month, as well as on specified holidays and during the summer; held the former wife in contempt of court for "failing to allow the [former husband] to exercise his 5th weekend visitation as court-ordered"; and denied all other requested relief. The judgment did not contain any findings of fact but stated

---

[2]See note 1, supra.

4

expressly that the former husband had established "[t]hat there has been a material change in circumstances so substantial that the welfare and best interest of the child would be promoted by a modification offsetting the disruptive effect of uprooting the child."

On August 8, 2025, the former wife filed a timely notice of appeal to this court. On August 11, 2025, the former husband filed a postjudgment motion, pursuant to Rule 59, Ala. R. Civ. P., requesting that the trial court amend its judgment to allow him to claim the child as a dependent for state- and federal-income-tax purposes. The former wife's appeal was held in abeyance until November 9, 2025, when the former husband's postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P.; Rule 4(a)(5), Ala. R. App. P.

The Evidence

The former husband, who hails from India, testified that he had resided in the Birmingham area for approximately 17 years, with Hoover having been his home for approximately the last 9 of those years. At the time of the trial, the former husband was employed as a "Scientist 1" by the University of Alabama at Birmingham ("UAB"). Since 2020, he had worked remotely from home five days a week. In addition to his work

5

obligations, the former husband was a student at UAB, where he was pursuing his Ph.D. in health-services research. He expected to graduate in December 2025. According to the former husband, his work and educational obligations had not prohibited him from exercising the visitation with the child that he had been awarded in the parties' divorce judgment.

The former husband and the child enjoyed various activities during their time together. The child had toys and books at the former husband's house for days that inclement weather prohibited outdoor activities. When weather permitted, they visited parks and engaged in other outdoor activities, such as visiting the Birmingham Zoo.

The former husband remarried shortly before the trial, and he and his current wife moved into a five-bedroom, two-and-one-half-bath house approximately one month before the trial. The former husband said that he had introduced the child to his current wife in August 2024 and that the child and his current wife had developed a good relationship since their introduction. His current wife did not have children of her own.

The former husband testified that the former wife, who also hails from India, had engaged in a pattern of denying him the fifth-weekend

visitation that he had been awarded in the September 2021 divorce judgment. According to the former husband, in 2021, 2022, and 2023, he had requested to visit with the child on the fifth weekend of those months that had a fifth weekend, but, he said, those requests had been largely denied by the former wife. The former husband estimated that, during that two-plus-year period, of the months that had fifth weekends, he had visited with the child approximately three times.

The former husband and the former wife struggled to come to a consensus on decisions regarding the child's education. Regarding the selection of the school that the child would attend, the former husband said that he had wanted the child to attend public school but that the former wife had preferred that the child attend a private school. According to the former husband, he and the former wife had participated in an interview at Highlands School, a private school located in Irondale, but, he said, they both had agreed that travel to that campus would be inconvenient because of the length of the drive.

Thereafter, the former wife informed the former husband that she was also considering Prince of Peace, a private Catholic school, and that she intended to tour that school's campus. The former husband testified

that he had informed the former wife that he would be unable to join her in touring that campus. According to the former husband, approximately one month later, the former wife had informed him that the child was starting school at Prince of Peace the following day.

The former husband testified that the former wife had failed to consult with him in any meaningful manner before she unilaterally selected which school the child would attend. The former husband testified that he objected to the child's attending Prince of Peace because he had concerns that the school was "faith based" and was "not diverse enough." He also said that he was concerned about the cost of the school, which, he said, the former wife had never discussed with him. At the time of the trial, the child was scheduled to begin his second year at Prince of Peace in the fall of 2025. The former husband testified that he had the flexibility to transport the child to and from school.

In April 2025, the former wife provided the former husband with written notification of her intent to relocate, along with the child, to Jackson, Mississippi. In her notice, the former wife, who was a medical student pursuing her M.D., indicated that her proposed relocation was due to her having been assigned to a medical-residency program at the

8

Mississippi Baptist Memorial Hospital in Jackson. According to the former husband, Jackson is located approximately 250 miles from his residence. He estimated that it takes him approximately three and one-half hours to drive to the former wife's residence in Mississippi if he is unaccompanied by the child. If accompanied by the child, the former husband estimated that the drive time increases by one and one-half hours to account for necessary travel breaks.

The former husband objected to the child's relocation to Jackson and opined that the proposed relocation was not in the child's best interest. He expressed concerns about the former wife's ability to parent the child considering the obligations of her medical residency. The former husband said that medical-residency programs obligate individuals to be on-call for 12-hour periods and to work in rotations, which include overnight shifts as well as weekend shifts. According to the former husband, in addition to the work-schedule rotations, medical-residency participants are subject to board exams, which, he said, further obligate residency participants to time for studying for those exams. The former husband testified that the former wife did not have family in Jackson and that he was not aware of any other support network that

9

the former wife might have in that area. By contrast, the former husband said that Birmingham has a large Indian community that can provide the child with a cultural connection to his heritage. Also, the former husband opined that the child would benefit if the child remained in the Birmingham area because the child could maintain his relationships with his friends.

Both the former husband and the former wife are immigrants to this country. The former husband said that he has a "green card" that allows him to stay in this country legally. He further testified that his immigration status is not dependent upon his maintaining employment. The former husband said that he will be eligible for United States citizenship in 2026.

At the time of the entry of the September 2021 divorce judgment, the former wife was in the United States on an H1 visa, which, according to the former husband, was a work permit that allowed the former wife to legally work in this country. However, the former husband said that the former wife had informed him that she was working under a J1 visa with her current employer. A J1 visa, according to the former husband, is a training visa that is mainly used for scholars and students who come

10

to this country to study. The significance of the J1 visa, according to the former husband, is that the former wife would "by default" have to leave this country for two years after she finishes her residency program in Jackson. On cross-examination, the former husband was presented with a copy of the former wife's green card. He conceded that his concerns regarding her immigration status were alleviated by that information.

The former wife testified that the residency-matching program is a confidential process pursuant to which a residency program and a candidate are matched. Neither the residency program nor the candidate has any control over the selection process other than the candidate's having listed his or her preferred geographic location during the process. The former wife said that she had requested to complete her residency in Birmingham, but, she said, that request was not honored. According to the former wife, her only match was in Jackson.

The former wife disputed the former husband's testimony regarding the time obligations her residency would require. The former wife's work hours for the first year of her residency, which she said were outlined in her employment contract, obligated her to work Monday through Friday

11

from 7:00 a.m. until 5:00 p.m.[3] She denied that her work requirements obligated her to work later than 5:00 p.m. She also denied that she would be obligated to work weekends for the first year of her residency. She, however, admitted that she was unaware of what her work schedule would be in the second and third years of her residency. The former wife opined that the continuation of her education would be in the best interest of the child. She testified that, upon the completion of her residency program, she would become a medical doctor and that the income she would receive as a medical doctor would provide her with the financial resources to elevate the child's standard of living and to pay for his education.

Regarding the former husband's visitation with the child, the former wife refuted the former husband's testimony indicating that he had been denied his fifth-weekend visitations with the child. She conceded that she and the former husband had experienced some disagreements about the fifth-weekend visitations, but, she said, during 2021, she either had allowed those visits to occur as ordered or had

---

[3]The former wife did not introduce her employment contact as an exhibit to substantiate her assertions.

agreed to makeup visitation to occur at a later date. The former wife also denied the former husband's assertion that she had unilaterally enrolled the child at Prince of Peace. She testified that she and the former husband had engaged in multiple discussions about Prince of Peace. She, however, conceded that the former husband had objected to the child's attending Prince of Peace because the school is faith-based.

Regarding the former husband's complaint seeking a modification of the child's custody, the former wife opined that it would be harmful or would cause a disruption to the child if he were to be removed from her physical care. To support her assertion, the former wife observed that she had been the child's primary caregiver since his birth, that she had provided for the child's schooling, that she had provided for his daycare, that she had established the child's eating habits as well as his sleeping habits, that she had assisted with the child's homework, and that she had provided for the child's extracurricular activities. She also expressed concern that removing the child from her physical care would disrupt the child's stability and would result in the child's experiencing confusion from no longer residing in her home.

At the time of the trial, the former wife, along with her parents ("the maternal grandparents"), were residing in a three-bedroom single-family home in Jackson. According to the former wife, the maternal grandparents could provide assistance in caring for the child, but, she said, they do not transport the child in an automobile. The neighborhood that the former wife and the maternal grandparents were residing in at the time of the trial has a community swimming pool, as well as a playground. According to the former wife, the child had made friends in the neighborhood.

## Discussion

On appeal, the former wife makes arguments directed to those portions of the trial court's judgment modifying the child's custody as well as finding her in contempt. Regarding the modification of the child's custody, the former wife argues that the trial court erred in awarding the former husband physical custody of the child because, she says, the trial court failed to apply the factors set forth in Ala. Code 1975, § 30-3-169.3, which is part of the Act, and because, she says, the former husband failed to present evidence sufficient to meet the standard set forth in Ex parte McLendon, 455 So. 2d 863 (Ala. 1984) (requiring that the movant prove,

in addition to a material change of circumstances, that the child's best interest will be materially promoted by a change of custody and that the benefits of the change will more than offset the inherently disruptive effects resulting from the change of custody). See Clements v. Clements, 906 So. 2d 952 (Ala. Civ. App. 2005).

We initially note that the former wife's contention that the trial court failed to apply the factors set forth in § 30-3-169.3 was not raised in the trial court. "This court cannot consider arguments raised for the first time on appeal. Our review is restricted to the evidence and the arguments considered by the trial court." S.K. v. Madison Cnty. Dep't of Hum. Res., 990 So. 2d 887, 895 (Ala. Civ. App. 2008). We further note that because the trial court did not allow a change of the child's principal residence, the factors set forth in § 30-3-169.3 are inapplicable. See Henderson v. Henderson, 978 So. 2d 36, 41-42 (Ala. Civ. App. 2007) (determining that § 30-3-169.3 only requires the trial court to consider those factors when determining whether a change of the principal residence should cause a change in custody). Thus, we decline to consider the former wife's arguments on this issue.

Regarding the former wife's contention that the former husband failed to present sufficient evidence to meet the standard set forth in Ex parte McLendon, we note that, in her brief to this court, the former wife concedes that, in its judgment, the trial court "did not make specific findings of fact." The former wife's brief, p. 25. In New Properties, L.L.C. v. Stewart, 905 So. 2d 797, 801-02 (Ala. 2004), our supreme court held that,

> "in a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review."

More recently, this court has had occasion to consider the application of New Properties and to decide whether certain judgments contained sufficient findings of fact such that the filing of a postjudgment motion was not necessary to preserve a challenge to the sufficiency of the evidence supporting the judgment. See K.M. v. S.R., 326 So. 3d 1062 (Ala. Civ. App. 2020).

In K.M., the judgment at issue was a juvenile court's judgment finding a child to be a dependent child. 326 So. 3d at 1063. Although the juvenile court's judgment determined that the child was a dependent

16

child, that judgment did not make specific findings regarding the circumstances giving rise to the child's dependency. Id. We explained that "a mere adjudication of dependency does not equate to a specific finding of fact that will excuse the filing of a postjudgment motion raising the issue of the sufficiency of the evidence to support the finding of dependency." Id. at 1064. We have since reiterated that, consistent with New Properties,

> "when a juvenile court makes the legal determination in a final judgment that a child is dependent, without further specifying the factual grounds for that determination, a party claiming that the dependency determination is not supported by sufficient evidence must file a postjudgment motion raising that issue to the juvenile court in order to preserve the issue for appellate review."

A.R. v. T.R., 375 So. 3d 1259, 1262 (Ala. Civ. App. 2022).

However, we have not always applied the principle set out in New Properties consistently. In Adams v. Adams, 21 So. 3d 1247 (Ala. Civ. App. 2009), this court considered the application of New Properties to a child-custody judgment that contained language similar to the language used by the trial court in the judgment entered in the present case. Like the present case, Adams concerned postdivorce litigation between two parents. The mother in Adams petitioned to modify the parties' divorce

17

judgment, and the father counterclaimed, seeking custody of the parties' children and other relief. 21 So. 3d at 1248. Following ore tenus proceedings, the Elmore Circuit Court entered a judgment that, among other things, awarded sole physical custody of the children to the father. 21 So. 3d at 1249.

The judgment at issue in Adams provided:

"'The [c]ourt heard numerous witnesses and observed their demeanor and also received documentary evidence. The [c]ourt finds that the [mother's] testimony was not credible. The [c]ourt further finds that domestic violence was committed by both parties during the marriage. Thus, any presumptions against either party created by the domestic violence statutes (§[§] 30-3-130 through -136, Ala. Code 1975) cancel each other out so that no presumption either against the [mother] or against the [father] is in place or if in place offset each other.

"'The [c]ourt finds that there has been a material and substantial change of circumstances since the final [divorce judgment], and that the positive good brought about by a change of custody will more than offset any disruptive effect caused by the change in custody. The [c]ourt thus finds that the [father] has met his burden of proof under the McLendon standard.'"

21 So. 3d at 1252 (footnote omitted). A majority of this court concluded that the above-quoted portion of the Elmore Circuit Court's judgment "contain[ed] sufficient factual findings to render unnecessary the filing of

18

a postjudgment motion challenging the sufficiency of the evidence pertaining to the custody modification." 21 So. 3d at 1253.

In a special writing dissenting to the rationale in the majority opinion addressing the sufficiency-of-the-evidence argument, Judge Thomas stated:

> "The main opinion holds that New Properties is inapplicable and, therefore, that no postjudgment motion challenging the sufficiency or weight of the evidence was necessary in this case because, it concludes, the trial court did make specific findings of fact with respect to whether the father met his burden of proof under the McLendon standard. According to the main opinion, those findings of fact were (1) that the mother's testimony was not credible; (2) that both parties committed domestic violence during the marriage but that any presumptions against either party arising from the domestic-violence statutes cancel each other out; and
>
>> "(3) 'that there has been a material and substantial change of circumstances since the final [divorce judgment], and that the positive good brought about by a change of custody will more than offset any disruptive effect caused by the change in custody. The Court thus finds that the [father] has met his burden of proof under the McLendon standard.'"

21 So. 3d at 1257 (Thomas, J., concurring in the judgment but dissenting from the rationale in part). Judge Thomas opined that "[i]tems (1) and (2) do constitute 'findings of fact,' but neither is responsive to the sufficiency issue that the mother raises on appeal. Accordingly, items (1)

19

and (2) are not 'specific findings of fact' within the meaning of New Properties." Id. Regarding item (3), Judge Thomas surmised:

"Item (3) -- which is a mere recitation of the McLendon standard and a statement that the father had met his burden of proof under McLendon -- is not a finding of fact, but a legal conclusion representing an application of the law to the facts, or a holding -- that the party with the burden of proof had satisfied the appropriate evidentiary standard and had thus met his burden. The trial court's legal conclusion that the father met his burden did not set out any of the factual underpinnings for that conclusion.

"Reciting the burden of proof that the father was required to meet per McLendon and '[s]aying that the [father] ha[d] sustained the burden of proof ... is not an adequate finding of the matters of fact involved in that issue .... It is in the nature of a legal conclusion rather than a finding of the underlying facts ....' United States v. Jefferson Elec. Mfg. Co., 291 U.S. 386, 408-09, 54 S.Ct. 443, 78 L.Ed. 859 (1934). When a trial court's decision is conclusory and does not detail or analyze the predicate facts upon which it is based, it is not a specific finding of fact. Cf. Jones v. Tyson Foods, Inc., 26 Ark. App. 51, 759 S.W.2d 578 (1988) (holding that Workers' Compensation Commission did not satisfy its statutory obligation to make 'specific findings of fact' by simply declaring in conclusory fashion that claimant failed to meet the burden of proof); Ellis v. Dravo Corp., 97 Idaho 109, 111, 540 P.2d 294, 296 (1975) (statement that claimant did not sustain his burden of proof 'is not a finding of fact at all but a conclusion of law')."

21 So. 3d at 1258 (Thomas, J., concurring in the judgment but dissenting from the rationale in part).

Like in <u>Adams</u>, the trial court in the present case simply recited in its judgment the burden of proof that the former husband was required to meet under <u>Ex parte McLendon</u> and did not set out any of the factual underpinnings for that conclusion. As previously stated, the judgment specifically provides, in pertinent part: "That there has been a material change in circumstances so substantial that the welfare and best interest of the child would be promoted by a modification offsetting the disruptive effect of uprooting the child." Thus, the trial court's conclusion that the former husband met the <u>Ex parte McLendon</u> standard is much like the dependency finding in the judgment at issue in <u>K.M.</u>

Although the opinion in <u>K.M.</u> did not explain its rationale in detail, the conclusion in <u>K.M.</u> rests on the distinction between a factual finding and a statement of a legal conclusion. Stating that a child is a dependent child is a statement of legal conclusion, as is a statement that a parent seeking a modification of a child's custody has met the <u>Ex parte McLendon</u> standard or that he or she has demonstrated a material change in circumstances and that the child's welfare and best interest would be materially promoted by a change in custody. The factual findings upon which either of those conclusions rest would include,

21

among other things, findings about the parent's circumstances and fitness for custody and how the child might be impacted by the actions of the parent or parents. In light of the application of New Properties in cases decided since the release of Adams, and, specifically, the application of New Properties in K.M. and its progeny, the conclusion in Adams that the judgment in that case, which did not contain any factual findings regarding the basis for its conclusion that the father had met the Ex parte McLendon standard, is no longer viable, and we therefore overrule Adams to the extent that it holds that a judgment containing language that merely mirrors the language of the Ex parte McLendon standard is a finding of fact that obviates the need to preserve the issue of the sufficiency of the evidence by filing a postjudgment motion.

As previously noted, the former wife concedes in her brief on appeal that the trial court did not make any findings of fact in its judgment in the present case. The former wife did not file a postjudgment motion. Thus, the former wife failed to properly preserve the issue of the sufficiency of the evidence, and we cannot consider the former wife's argument relating to the sufficiency of the evidence supporting the trial

22

court's judgment modifying custody of the child. New Props., 905 So. 2d at 801-02; K.M., 326 So. 3d at 1063.

Lastly, the former wife contends that the trial court erred in finding her in contempt of court because, she says, that finding is unsupported by the evidence. In its judgment, the trial court held the former wife in contempt for "failing to allow [the former husband] to exercise his 5th weekend visitation as court-ordered." Even if we assume that the trial court erred in finding the former wife in contempt for denying the former husband his fifth-weekend visitation with the child, the trial court imposed no sentence or sanction upon the former wife, and, therefore, any error in its determination would be harmless error. See Adcock v. Fronk, 289 So. 3d 1244, 1254 (Ala. Civ. App. 2019) (quoting Cheek v. Dyess, 1 So.3d 1025, 1031 (Ala. Civ. App. 2007)) (concluding that any possible error in a contempt finding was harmless error when the "'contempt judgment ... imposed no sanction upon the [appellant], nor were the [appellant's] person, property, or rights adversely affected by the judgment'"); Rule 45, Ala. R. App. P. ("No judgment may be reversed or set aside ... for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is

23

made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."). Accordingly, we affirm the trial court's judgment insofar as it determined that the former wife was in contempt of court for denying the former husband his fifth-weekend visitation with the child.

<u>Conclusion</u>

Because the former wife has failed to raise an argument on appeal that merits reversal of the trial court's judgment, that judgment is affirmed.

AFFIRMED.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.