Rel: May 1, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-0567 and CL-2025-0568

_____

## Mary Ellen Williams

### v.

## Thomas M. Williams, Jr.

### Appeals from Lauderdale Circuit Court
### (DR-21-900294.01 and DR-21-900294.02)

FRIDY, Judge.

Mary Ellen Williams ("the mother") appeals from custody-modification judgments of the Lauderdale Circuit Court ("the trial court") that awarded Thomas M. Williams, Jr. ("the father"), sole physical custody and sole legal custody of the parties' children, J.W., E.W., and W.W ("the children"). For the reasons set forth herein, we reverse the

judgments and remand the causes for the trial court to enter new judgments.

## Background

In March 2022, the trial court entered a judgment divorcing the parties. The divorce judgment incorporated an agreement of the parties and awarded them joint legal and joint physical custody of the children. The agreement required the mother to relocate to within a twenty-five-mile radius of the father's residence in Florence on or before April 30, 2022. It provided that, until the mother relocated within that radius, she would have visitation with the children the first and third weekends of each month from Friday at 5:00 p.m. until Sunday at 5:00 p.m., together with holiday visitation as provided in a joint-physical-custody holiday schedule. If the mother relocated within the required twenty-five-mile radius, the agreement provided that the parties would exercise physical custody on a rotating schedule, with the father exercising custody from Sunday at 7:00 a.m. until Wednesday at 6:00 p.m., and the mother exercising custody from Wednesday at 6:00 p.m. until Sunday at 7:00 a.m. The divorce judgment also provided for holiday custody according to an attached holiday schedule and allowed each parent one uninterrupted

2

summer custodial period of up to ten consecutive days, with notice requirements alternating by year.

On December 28, 2023, the mother filed a verified petition for a rule nisi and modification. In her petition, she alleged that the father had willfully refused to confer with her regarding decisions affecting the children, had refused to comply with the divorce judgment by unilaterally enrolling the children in activities affecting her custodial time, had failed to provide her access to school information, and had threatened or intimidated her in attempts to force changes to the custodial arrangement. She asked the court to hold the father in both civil and criminal contempt and to order him to pay her attorney's fees and court costs.

The mother also alleged that material changes in circumstances had occurred since the entry of the divorce judgment, and she sought several modifications to the parenting provisions in that judgment. Specifically, she requested defined birthday visitation, more uniform exchange times and locations, limits on direct interaction between the parties, a requirement that the parties communicate through the Our Family Wizard application, clarification of a provision permitting

"occasional nights with a grandparent," and removal of the provision requiring her to reside within a twenty-five-mile radius of the father's residence.

The father filed an answer denying the allegations of the mother's petition. He later amended his answer and asserted counterclaims seeking to hold the mother in contempt and a modification of the divorce judgment. He alleged that the mother had refused to comply with provisions of the divorce judgment and had failed to cooperate with him regarding the children's schedules and activities. He further alleged that material changes in circumstances warranted modification of the existing custody arrangement and asserted concerns regarding the mother's communications with the children and her failure to keep him informed of her residence. He also alleged that the children had reported to him that the mother had suggested there was "something off in her brain," had joked about inappropriate adult matters with the children, had failed to comply with the Alabama Parent-Child Relationship Protection Act ("the relocation act"), § 30-3-160 et seq., Ala. Code 1975, and had refused to keep him informed of the primary address where she lived and exercised custody. Despite the fact that the parties were

4

exercising joint physical custody of the children, the father asked the trial court to order the mother to abide by the portion of the divorce judgment providing her with visitation rights, which applied only if she did not reside within twenty-five miles of the father's residence. The mother answered the father's counterclaim on February 14, 2024, denying the allegations.

On June 18, 2024, the father filed a motion for a rule nisi alleging additional violations of the divorce judgment. On August 5, 2024, the mother moved to dismiss the father's motion for a rule nisi, asserting that the allegations were separate from and unrelated to the allegations in her petition and, therefore, constituted a new action without the filing of a counterclaim or the payment of a filing fee. On August 7, 2024, the father filed a petition for a rule nisi, and the record reflects that the mother was served at a residence in Madison and that Andrew Nay, her current husband, accepted service on her behalf, identifying himself as the mother's husband and coresident. In the petition, among other things, the father alleged that the mother had relocated to Madison, which, he said, is approximately sixty-five miles from his residence in Florence, in violation of the divorce judgment's twenty-five-mile

5

residency restriction. He further alleged that the mother had made unilateral decisions concerning the children's schooling, extracurricular activities, counseling, and religious activities without notifying him, had withheld the children from him during his custodial time, and had arranged for one child's baptism without consulting him. The father also alleged that the mother had unilaterally placed the children in counseling in Madison, which he believed the children did not need because they were typical boys, were "happy and healthy," and were doing "well in school and at home."

On August 9, 2024, the father moved to consolidate the related actions, asserting that both matters involved the same parties and issues relating to modification and contempt. The trial court consolidated the mother's and the father's actions on August 15, 2024. On October 16, 2024, the mother filed an answer denying the allegations in the father's petition.

On August 15, 2024, the father filed a verified objection to relocation, asserting that the mother should not be permitted to relocate the children outside the divorce judgment's twenty-five-mile residency restriction because doing so would not be in the children's best interests.

6

He cited § 30-3-169.4, Ala. Code 1975, a part of the relocation act, which establishes a rebuttable presumption that a change in a child's principal residence is not in the child's best interests and places the initial burden of proof on the party seeking relocation. The father alleged that the children had strong ties to Lauderdale County, including their schools, extended family, and community, and that relocation to Madison -- where the mother's husband resided -- would significantly reduce the father's ability to exercise custodial time because the children had lived minutes from him but would live approximately two hours away if the relocation occurred. He further alleged that relocation would disrupt the children's established relationships and make the existing custodial schedule impracticable. Based on those assertions, the father requested that the trial court prohibit the mother from relocating with the children outside the twenty-five-mile radius and, alternatively, that, if the mother relocated, the trial court modify custody of the children by awarding him sole physical custody.

The trial court conducted a trial on the parties' petitions over three days in October and November 2024. The mother testified that her current address was in Killen and that her secondary address was in

Madison with her husband. She testified that she stayed at the Killen residence four to five nights each week and stayed at the Madison residence "a couple of nights each week." She further testified that she did not consider herself to be living in "two different places" and that the divorce judgment required her to live within twenty-five miles of the father's residence.

The mother testified that she had moved from an apartment in Muscle Shoals to the Killen residence in May 2023, before she had married her husband. She acknowledged that the lease term for the Killen residence ran from June 4, 2024, through December 3, 2024, meaning it was set to expire the month after the trial, and she acknowledged that the lease listed both her and her husband as residents. She denied, however, that she had commenced the action because she had intended to leave Killen and move to Madison. She testified that, although she would prefer for her family to live together in one home, she and her husband had agreed to maintain two homes for as long as possible so that she could maximize her time with the children. She testified that she intended to continue the same arrangement by entering into another lease and maintaining two homes; however, as of

8

the second day of trial on November 1, she had not signed a new lease. She later testified, on the last day of trial on November 12, that her lease for the Killen residence had been renewed, but she acknowledged that she would like to move to Madison, while maintaining that her desire to move had not been the sole reason she had commenced the action.

The mother testified that she had filed her petition because of concerns she had observed regarding the children and because she wanted to improve coparenting and communication with the father. She acknowledged, however, that the petition had specifically requested removal of the twenty-five-mile residency restriction. She testified that she sought removal of that restriction because it could be helpful and because she believed it might benefit the children if they could live in one household with her, her husband, and their stepsiblings when they were in her care. She testified that she believed that having a single home would provide additional stability for the children. Even so, she also testified that she and her husband had married with the understanding that the existing residency restriction might remain in place and that they were prepared to comply with that restriction if necessary.

The trial-court judge explained that, even if the twenty-five-mile restriction in the divorce judgment were removed, the mother still could not relocate more than sixty miles from the father's residence without court involvement if the father objected. The trial-court judge asked the mother whether she understood that distinction and noted that she had repeatedly stated that she was not asking to move to Madison. The trial-court judge further explained that relocation limits exist to address practical problems in joint-custody cases, including school attendance, transportation, and the burden created when a parent moves a substantial distance away. The mother testified that she understood.

When asked whether she had determined the distance between the Madison address and the father's residence, the mother testified that she believed that it was approximately fifty-eight miles. The trial-court judge observed that, if that estimate were correct, the Madison residence would fall within the sixty-mile statutory limit but would still violate the twenty-five-mile restriction in the divorce judgment, and the mother's counsel agreed with that understanding.

The trial-court judge addressed the uncertainty over whether the Madison residence was within sixty miles of the father's home. The trial-

court judge described the distance issue between the father's residence and the Madison residence as a "conundrum" because the mileage varied depending on the route used. The trial-court judge explained that the most direct route -- straight along Highway 72 -- appeared to be about fifty-eight miles between the residences, which would fall within the sixty-mile statutory limit. The trial-court judge further explained, however, that the fastest route appeared to be about sixty-five miles and thus exceeded the sixty-mile limit. During that discussion, the father's counsel referenced a Google Maps (a widely used mapping website) calculation showing a distance of approximately sixty-five miles and a travel time of about one hour and fifteen minutes between the two residences' driveways, while the trial-court judge reiterated that the sixty-five-mile calculation reflected the fastest route, and the father's counsel conceded that she had also seen the fifty-eight-mile route. The trial-court judge further noted that, although the fifty-eight-mile route would likely take longer because of traffic through Athens and Madison, it was shorter and would place the distance under the sixty-mile limit.

11

On March 10, 2025, the trial court entered identical final judgments in both cases. In a section of the judgments titled "Primary Issue Requiring Modification," the trial court wrote, in pertinent part:

> "Since the original divorce decree, which was an uncontested divorce and agreement of the parties, both parties re-married. Additionally, from the evidence at trial, the mother's new husband resides in Madison County, Alabama, [at a residence] which is over sixty (60) miles away. However, the mother testified that this was not a relocation matter, yet she was equivocal about whether she intended to maintain two residences. One residence is in Killen, (Lauderdale County) Alabama, ... so that she may maintain compliance with the original divorce decree and agreement, which requires her to maintain a residence within 25-miles of the father. …
>
> "….
>
> "While other issues were pled, as well as litigated, in the cross-petitions for Rule Nisi, cross-petitions for Modification/Counterclaim(s) (e.g. issues labeled and argued by the parties as 'parenting issues'), <u>the critical issue nonetheless appears to this Court as the 'relocation' matter</u>, though the [mother] testified that she did not inten[d] to relocate the children. Yet other evidence indicated that she spent much of her time at the Madison County residence. Moreover, when specifically questioned by the Court regarding the relief she was requesting, the mother emphasized to the Court that she wanted the 25-miles residency restriction lifted, which then further serves to impeach her denials that she does not intend to relocate the children."

(Emphasis added.)

12

After considering the evidence, the trial court determined that material changes in circumstances had occurred and that a modification of custody was necessary to serve the children's best interests. The trial court awarded the father sole legal custody and sole physical custody of the children. The trial court also vacated the twenty-five-mile residency restriction contained in the divorce judgment and provided that the mother may reside wherever she chooses.

As for the mother's visitation rights with the children, the trial court provided that she should have as much parenting time "as practicable and as mutually agreed to by the parties." It further provided that if the parties could not agree on the mother's visitation rights, "then they should try to adhere to the Lauderdale County Standard Visitation Guidelines ... for weekly visitation," except for visitation relating to holidays or special events, which, the trial court wrote, should remain as set forth in the divorce judgment. The trial court wrote that, if the Lauderdale County weekly visitation guidelines "prove[d] too much of a hardship on the children as they are travelling too much between Madison/Huntsville and Florence ... during any given school week," the mother was to have visitation with he children during the first and third

13

weekends of every month while school was in session, with the exception that,

> "[i]f the mother's weekend falls on a weekend where there is a significant extracurricular event, for example, school events, then the mother is to ensure that the children make these schedule[d] events, or alternatively, the parties are to adjust weekends with the father getting the children to their events/activities and the mother exercising her weekend on another weekend without conflicts. However, it is the intention of this modification that the mother and [her husband] ... get the children to their events on their prescribes weekends."

As to parenting time during the summer, the trial court wrote that the parties could agree between themselves with whom the children would reside, taking into consideration the children's needs and activities. The trial court expressed its preference that the parties would exercise "week-on-week-off" visitation during the summers "while the children [were] still young enough," especially if the mother's visitation was limited to two weekends a month during the school year. In addition, the trial court provided that each party was entitled to exercise a visitation period of at least ten consecutive days with the children each summer.

The trial court concluded that, in light of the custody modification, any other relief requested by the parties was either moot or denied.

14

Finally, it held that all provisions of the divorce judgment not expressly modified would remain in effect.

The mother moved to alter, amend, or vacate the judgments, arguing that they were contrary to the evidence and constituted an abuse of discretion. The trial court held a hearing on those motions, during which the mother's counsel argued that the trial court had erred in treating the case as a relocation matter. The mother's counsel asserted that the only request related to relocation had been the mother's request that the twenty-five-mile residency restriction be modified and maintained that the mother had not invoked the relocation act. The mother's counsel further asserted that, had the residency restriction been removed, the mother would still have been required under the relocation act to notify the father if she planned to relocate more than sixty miles away and, if he objected, to bring the matter before the court at that time. The trial-court judge responded that he had "taken everything the father did as an objection to the relocation" and that the issue was "presently being litigated." When the mother's counsel again argued that there had been no request to move and no invocation of the relocation act, the trial-court judge stated that the evidence reflected that the mother had

established a second residence in Madison "right on the edge or right outside of the sixty-mile radius." The trial-court judge further stated that he "had to make a decision, and [had] decided it was a relocation case." The father's counsel then argued that the matter was a relocation case, stating that the father had filed an objection and that the trial court had followed the relocation act and had acted in the best interests of the children.

The trial court denied the mother's postjudgment motions. The mother thereafter filed timely notices of appeal in both cases, and this court consolidated the appeals ex mero motu.

Standard of Review

Our standard of review is well settled. We presume that a trial court's judgment based on ore tenus evidence is correct, and we will not reverse it absent a showing that the trial court acted outside its discretion or that the judgment is unsupported by the evidence so as to be plainly and palpably wrong. Henderson v. Henderson, 978 So. 2d 36, 39 (Ala. Civ. App. 2007). However, when we are presented with an issue of law, we review the judgment of the trial court as to that issue de novo. Id.

Analysis

The mother contends that the trial court erred in treating this case as a relocation dispute governed by the relocation act. She argues that the relocation act was not triggered because the Madison residence was within sixty miles of the father's residence. In his appellate brief, the father argues that, although the mother contends that the Madison residence is less than sixty miles from his residence, the evidence at trial indicated that the distance between the residences exceeds sixty miles depending on the route taken. He acknowledges that an alternative route of approximately fifty-eight miles was discussed, but he asserts that the trial court determined that that route would take longer because it required travel through Madison and Athens and involved heavier traffic. According to the father, that longer travel time would negatively affect the children's travel to school and activities; therefore, he maintains that relocating to Madison would violate the sixty-mile limitation under the relocation act.

Although the final judgments do not expressly state that the trial court applied the relocation act, or any particular provisions of that act, it held that the Madison residence was more than sixty miles away and

17

described the mother's asserted relocation to Madison as the "critical" and "primary" issue requiring a custody modification. The record likewise reflects ongoing references to the relocation act. At the postjudgment hearing, the mother's counsel argued that the mother had sought only removal of the twenty-five-mile residency restriction and had not invoked the relocation act, and the trial-court judge rejected that argument, stating that he had treated the father's actions as an objection to relocation, that the issue was being litigated, and that the evidence showed that the mother had established a second residence in Madison near or outside the sixty-mile radius. The father's counsel likewise argued that the case involved relocation and that the trial court had properly followed the relocation act. Despite these repeated references, the final judgment does not explicitly indicate whether the trial court applied the relocation act -- or the burdens and presumptions it creates -- in resolving the parties' claims.

The purpose of the relocation act is to "promote[] the general philosophy in this state that children need both parents, even after a divorce ...." § 30-3-160, Ala. Code 1975. The relocation act places certain obligations on parents who are relocating; for example, a parent "who has

the right to establish the principal residence of [a] child" must notify "every other person entitled to custody of or visitation with a child of a proposed change of the child's principal residence," § 30-3-163, Ala. Code 1975, and every person entitled to custody or visitation with a child must provide notice to any other such person of his or her intention to change his or her residence, § 30-3-164, Ala. Code 1975. Any person entitled to notice of a change of a child's principal residence may, within thirty days of receiving such notice, seek a temporary or permanent order preventing the change of the child's principal residence. § 30-3-169, Ala. Code 1975.

Section 30-3-169.4, Ala. Code 1975, which is part of the relocation act, provides that, in resolving an objection to the change of a child's principal residence, "there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child." Section 30-3-169.3(a), Ala. Code 1975, provides that "a court may consider a proposed change of principal residence of a child as a factor to support a change of custody of the child." Importantly, however, except in circumstances not relevant here, neither § 30-3-169.3 nor § 30-3-169.4 "apply to a change of principal residence of a child to a residence which is 60 miles or less from the residence of a non-relocating parent who is

19

entitled to custody of or visitation with the child ...." § 30-3-162(b), Ala. Code 1975. Thus, if the Madison residence was sixty miles or less from the father's residence, the provisions of the relocation act relating to custody modification and the presumptions and burdens attendant thereto, namely § 30-3-169.3 and § 30-3-169.4, among others, do not apply. The trial court concluded that the Madison residence was more than sixty miles from the father's residence. We disagree.

It was undisputed at trial that the Madison residence could be reached by a route of approximately fifty-eight miles from the father's residence. The trial court acknowledged that the most direct route between the residences appeared to be about fifty-eight miles, and the father's counsel conceded during that discussion that she also had seen the fifty-eight-mile-route calculation. Although it was argued that this shorter route might take longer because of traffic through Athens and Madison, the distance nonetheless placed the residences within the sixty-mile statutory threshold.

The inquiry under § 30-3-162(b) concerns the distance between the father's residence and the Madison residence. We need not determine, in this case, whether the distance between those residences should be

measured by a straight line (i.e., "as the crow flies") or by the roads one would travel between the residences, although we note that at least one court has concluded that, "[i]n the absence of any statutory or contractual provision governing the manner of measurement of distances, the general rule is that distance should be measured along the shortest straight line, on a horizontal plane and not along the course of a highway or along the usual traveled way." See Tucker v. Liebknecht, 86 So. 3d 1240, 1242 (Fla. Dist. Ct. App. 2012). Here, whether measured by a straight line or by a traveled route, it was undisputed that the distance between the father's residence and the mother's husband's residence in Madison was less than sixty miles.[1]

The fact that a quicker driving route between the residences may exceed sixty miles does not alter the agreed fact that a route of approximately fifty-eight miles exists between the father's residence and the Madison residence. Because that distance falls within the sixty-mile limit set out in § 30-3-162(b), the plain language of the statute indicates

---

[1]Although there was no evidence at trial about the straight-line distance between the father's residence and the mother's husband's residence, the fact that there was a route of travel between the two residences of less than sixty miles means, necessarily, that a straight line between the two residences would be less than sixty miles.

21

that the provisions of the relocation act governing the parties' relative burdens regarding the children's best interests and whether a proposed change of residence can serve as a factor supporting a change of custody -- § 30-3-169.3 and § 30-3-169.4 -- would not apply in these cases.

Because the mother's potential relocation to Madison did not trigger application of the presumptions and burdens created by § 30-3-169.3 and § 30-3-169.4, any analysis of the father's request to modify custody under those provisions would have been erroneous. However, we cannot discern from the trial court's judgments whether it applied those provisions in determining whether to modify custody. On the one hand, the trial court plainly applied the standard from Ex parte Couch, 521 So. 2d 987, 989 (Ala. 1988), when it concluded that there had been a material change in circumstances and that it was in the children's best interests to modify custody. That was the correct standard, because the parties had joint physical custody of the children. See L.B. v. V.T.W., 387 So. 3d 1157, 1161 (Ala. Civ. App. 2023) ("The Couch 'best interests' standard is … applicable to the modification of a judgment that awarded joint physical custody of a child to the parents."). However, the trial court determined that the mother's relocation was "the critical issue," and it made an

22

explicit finding of fact that the distance relating to the relocation exceeded sixty miles, a finding that, it appears to us, would have been unnecessary were the trial court not applying the burdens and presumptions set forth in § 30-3-169.3 and § 30-3-169.4. Because we cannot determine whether, in deciding to modify custody, the trial court applied those presumptions and burdens or, instead, relied solely on the Ex parte Couch standard without reference to those presumptions and burdens, and because we cannot conclude that the trial court would have reached the same conclusion regardless of whether it presumed that the relocation of the children brought about by the mother's relocation to the Madison residence was not in their best interests, we are constrained to reverse the judgments and remand the cases for the entry of new judgments that inform the parties whether the trial court applied those portions of the relocation act that we have concluded have no application in resolving the father's custody-modification request. See Turner v. Denney, 899 So. 2d 1016, 1017-18 (Ala. Civ. App. 2004) (reversing judgment modifying custody and remanding case when appellate court was "unable to determine what standard the trial court applied in modifying custody").

In remanding these actions, we do not suggest that the evidence was insufficient as a matter of law to support an award of sole legal and physical custody to the father under the best-interests standard. To be sure, the evidence concerning the mother's living arrangements and the possibility (or actuality) of her move to Madison was not irrelevant. The trial court was entitled to consider those facts, along with the evidence regarding travel to school, the feasibility of the existing joint-physical-custody arrangement, and the parties' ongoing coparenting disputes. However, a change in a custodial parent's residence, standing alone, does not necessarily justify a change in custody; rather, it is only one factor to be considered in determining whether a material change in circumstances has occurred. Means v. Means, 512 So. 2d 1386, 1388 (Ala. Civ. App. 1987).

Accordingly, the judgments are reversed and the cases remanded for the trial court to clarify the standard it applied. If the trial court applied the burdens and presumptions set out in § 30-3-169.3 and § 30-3-169.4 of the relocation act, it must reconsider the parties' claims under Ex parte Couch's best-interests standard without applying those burdens

and presumptions. If it did not apply those burdens and presumptions, the new judgments should say so.

In addition, we note that the school-year visitation provisions in the final judgments are unclear, making it difficult to determine whether they comply with Alabama law. Specifically, it is uncertain whether the final judgments establish a definite, enforceable minimum visitation schedule independent of the custodial parent's discretion. See Pratt v. Pratt, 56 So. 3d 638, 644 (Ala. Civ. App. 2010).

For example, regarding the mother's school-year visitation, if the parties are unable to agree on the mother's visitation between themselves, they are to apply the Lauderdale County Standard Visitation Guidelines unless the guidelines prove to be too much of a hardship on the children. However, the judgments do not set forth which party determines whether the guidelines prove to be too much of a hardship or whether the parties are to mutually agree as to that issue.

Assuming the parties agree that application of the guidelines do, in fact, create too much of a hardship, the mother's school-year visitation is to be every first and third weekend; however, if the children had a "significant extracurricular event" on one of the mother's weekends, then

the mother and her husband are to ensure that the children get to the event, or the parties must switch weekends. However, the judgments do not define when an extracurricular event is "significant," and they provide no guidance as to how the parties are to resolve any conflict resulting from the parties' inability to agree on a make-up weekend for the mother. Because the father, as sole legal and physical custodian, necessarily controls the children's schedules, he appears to hold the practical authority to make those determinations.

Finally, it is entirely unclear with whom the children will live -- and who will decide with whom the children will live -- during the summers. The judgments simply express a preference that the parties will exchange the children on a weekly basis, but there is nothing in the judgments that requires such an exchange. The only certainty with regard to summers is that each parent is entitled to one visitation period of at least ten consecutive days. Again, other than the consecutive-day visitation, it appears that the father, as the children's sole custodian, may be able to exercise unfettered control over the mother's summer visitation rights with the children.

The judgments' lack of clarity regarding visitation rights raises a substantial question whether the final judgments provided the mother with a sufficiently definite visitation schedule upon which she may rely, as required under Alabama law. See Pratt, 56 So. 3d at 643-44 (holding that a visitation award must provide a "sufficient, specified visitation schedule" independent of the custodial parent's discretion and that a grant of broad discretion that could effectively eliminate visitation is improper). Although the final judgments appear to contemplate a fallback schedule -- i.e., the first and third weekends of each month -- the undefined "significant event" exception and the absence of any identified decision maker or objective standard leave uncertain whether that schedule is actually guaranteed or may be displaced in practice. As well, the judgments' provision for summer visitation lacks almost any specific, enforceable visitation rights for the mother. Alabama courts have recognized that visitation provisions lacking definite parameters are unduly vague and likely to generate continued disputes. See K.F. v. Cleburne Cnty. Dep't of Hum. Res., 78 So. 3d 983, 991 (Ala. Civ. App. 2011) (concluding that a visitation award that fails to specify when visitation occurs may lead to additional litigation); R.K.J. v. J.D.J., 887

27

So. 2d 915, 919 (Ala. Civ. App. 2004) (reversing judgment that failed to establish a definite visitation schedule). Likewise, even when cooperation between the parties is encouraged, a custody judgment must include a concrete minimum visitation schedule. A.B. v. A.A., 334 So. 3d 223, 228-29 (Ala. Civ. App. 2021) (requiring that a baseline schedule be set notwithstanding discretionary or agreed visitation), overruled on other grounds by J.M.L. v. Tuscaloosa Cnty. Dep't of Hum. Res., 402 So. 3d 832 (Ala. Civ. App. 2024).

Here, because the final judgments leave too much unresolved regarding the mother's visitation rights, the visitation provisions are too vague to determine whether they satisfy Alabama law and create a significant risk of continued litigation over visitation rights. To be sure, we do not suggest that the trial court may not require the mother to ensure that the children attend extracurricular or school events during her visitation periods; rather, the concern is that the final judgments do not clearly establish a definite, enforceable visitation schedule independent of the father's discretion. On remand, in the interest of judicial economy, we direct the trial court, if its new judgments again award the father sole physical custody of the children and the mother

28

visitation rights, to reconsider the parameters of the visitation arrangement so that the mother is provided a specified visitation schedule that is independent of the father's discretion.

## Conclusion

For the foregoing reasons, the trial court's judgments modifying custody are reversed, and the cases are remanded for the trial court to enter new judgments and, in so doing, (1) to clarify whether it applied the burdens and presumptions deriving from § 30-3-169.3 and § 30-3-169.4 in resolving the father's request to modify custody; (2) if it did so, to reconsider its resolution of the father's request; and (3) should it award the father sole physical custody and the mother visitation rights in its new judgments, to ensure that the visitation award provides a specific schedule free of any doubt or ambiguity as to the mother's visitation rights with the children and that is independent of the father's discretion.

CL-2025-0567 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0568 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.